Patricia McLEAN, Petitioner–Appellant,

v.

John MORAN, Sheriff of Clark County, Brian McKay, Attorney General of State of Nevada, Respondents–Appellees.

No. 91–15140.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided May 11, 1992.

John G. Watkins, Las Vegas, Nev., for petitioner-appellant.

Charlotte M. Matanane, Deputy Atty. Gen., Crim. Justice Div., Las Vegas, Nev., David F. Sarnowski, Deputy Atty. Gen., Carson City, Nev., for respondents-appellees.

Before: BOOCHEVER, NORRIS and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

■ This appeal questions the constitutionality of Nev.Rev.Stat. § 484.381(1). This statute creates a presumption that individuals with 0.10% or more by weight of alcohol in their blood, as demonstrated by a test, had no less than that amount of alcohol present in their blood at the time of the alleged violation of driving under the influence of alcohol (DUI).

We recognize the tremendous toll of death, injury, and grief caused by those who, under the influence of alcohol or drugs, drive steel juggernauts capable of high speeds and devastating destruction. Nevertheless, the ascertainment of guilt must conform to the requirements of the Fifth Amendment to the Constitution, made applicable to the states by the Fourteenth Amendment, which are at the core of our system of justice. One is presumed innocent until proven guilty beyond a reasonable doubt. We conclude that the manner in which the Nevada statute was applied in this case violates that basic constitutional concept.

## FACTS

On December 14, 1986, petitioner Patricia McLean was stopped by a highway patrol trooper because she was driving erratically. The officer noticed that her eyes were bloodshot and that she had an odor of alcohol. Her speech, however, was not slurred and she did not have any difficulty standing or walking. In response to the officer's questioning, McLean stated that she had been drinking. The officer administered five field sobriety tests, and McLean's performance was unsatisfactory in at least three of these tests. He arrested her for driving with 0.10% or more by weight of alcohol in the blood, in violation of Nev.Rev.Stat. (NRS) § 484.379(1)(b).[1]

At McLean's bench trial, the criminalist employed by the Las Vegas Police Department testified that McLean's blood test revealed 0.16% by weight of alcohol in her blood. The test, however, was administered 30 to 45 minutes after McLean had been pulled over. He also testified that a blood test does not indicate what the blood alcohol concentration (BAC) was at the time of driving and that he could not extrapolate a person's BAC at the time of driving without more information, such as the quantity and type of drinks consumed, when the driver had started and stopped drinking, and what and when the driver had last eaten. Under certain circumstances, the criminalist testified, McLean's BAC could have been less than 0.10% at the time of driving. Furthermore, the officer who had arrested McLean admitted under cross-examination that an individual could fail all field sobriety tests even if her BAC was under 0.10%.

McLean was found guilty of violating NRS § 484.379(1)(b). Having exhausted her state postconviction remedies, she sought habeas corpus relief in federal district court, which was denied. This timely appeal followed.

---

1. NRS § 484.379(1) (1991) reads:
 It is unlawful for any person who:
 (a) Is under the influence of intoxicating liquor; or
 (b) Has 0.10 percent or more by weight of alcohol in his blood,

 to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

## DISCUSSION

McLean challenges her conviction under Nev.Rev.Stat. § 484.379(1)(b) for driving while having 0.10% or more by weight of alcohol in her blood. Nevada creates the following presumption by statute:

In any criminal prosecution for a violation of NRS 484.379 or 484.3795 in which it is alleged that the defendant was driving or in actual physical control of a vehicle while he had 0.10 percent or more by weight of alcohol in his blood, *the amount of alcohol shown by a chemical analysis of his blood,* urine, breath or other bodily substance *is presumed to be no less than the amount present at the time of the alleged violation.*

Nev.Rev.Stat. § 484.381(1) (1991) (emphasis added). McLean argues that this statutory presumption is unconstitutional. She claims that the lack of a rational connection between the fact proved and the ultimate fact presumed violates the Due Process Clause of the Fifth and Fourteenth Amendments. We review *de novo* the district court's denial of her habeas corpus petition. *Norris v. Risley,* 878 F.2d 1178, 1180 (9th Cir.1989).

 A presumption is a rule of law by which the finding of one fact, the "basic" or "evidentiary" fact, gives rise to the existence of an element of the crime, the "presumed" or "ultimate" fact. *County Court v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979) [hereinafter *Ulster County Court*]. In criminal cases, a presumption must not undermine the factfinder's responsibility at trial, based on evidence presented by the State, to find the ultimate facts beyond a reasonable doubt. *Id.* This prohibition stems from the Due Process Clause of the Fourteenth Amendment, which "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

The Supreme Court has delineated three types of criminal presumptions: 1) permissive, 2) mandatory rebuttable, and 3) mandatory conclusive. *See Francis v. Franklin,* 471 U.S. 307, 314 & n. 2, 105 S.Ct. 1965, 1971 & n. 2, 85 L.Ed.2d 344 (1985); *Ulster County Court,* 442 U.S. at 157 & n. 16, 99 S.Ct. at 2224 & n. 16. A permissive inference or presumption allows, but does not require, the trier of fact to infer the presumed or elemental fact from proof of the basic fact and does not shift the burden of production or persuasion to the defendant. *Ulster County Court,* 442 U.S. at 157, 99 S.Ct. at 2224. If the prosecution relies on a permissive presumption as one part of its case, only a "rational connection" is required between the basic facts proved and the ultimate fact presumed, and the latter must be "more likely than not" to flow from the former. *Id.* at 165–67, 99 S.Ct. at 2228–30. Thus, for example, if NRS § 484.381(1) permitted, but did not require, the factfinder to presume that a blood alcohol test reading of 0.10% indicated that the driver had at least 0.10% alcohol in the blood when driving, such a permissive presumption could be applied as long as the former fact is more likely than not to lead to the latter inference.

Mandatory presumptions, however, pose greater potential for constitutional problems because they may affect not only the strength of the "beyond a reasonable doubt" burden but also the placement of that burden. A mandatory rebuttable presumption tells the factfinder that he *must* find the presumed element upon proof of the basic fact, unless the defendant comes forward with some evidence to rebut the presumed connection between the two facts. *Ulster County Court,* 442 U.S. at 157 & n. 16, 99 S.Ct. at 2224 & n. 16. Once the defendant satisfies this burden of producing evidence to rebut the presumed fact, the ultimate burden of persuasion returns to the State. *Id.* at 157–58 n. 16, 99 S.Ct. at 2224–26 n. 16. Although the defendant may present evidence to rebut the presumption, if the defendant chooses not to do so, the factfinder must accept the presumption as true, even if it is the sole evidence of an element of the offense. In such a case, "since the prosecution bears the burden of establishing guilt, it may not

rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." *Id.* at 166–67, 99 S.Ct. at 2229–30. Such mandatory rebuttable presumptions often have been found to be constitutionally defective. *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979) (holding unconstitutional jury instructions which jury may have interpreted as establishing a mandatory rebuttable or conclusive presumption adverse to the defendant on the issue of intent); *Mullaney v. Wilbur,* 421 U.S. 684, 686, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508 (1975) (holding unconstitutional jury instructions which shifted to defendant the burden of disproving implied malice by a "fair preponderance of the evidence").

Finally, a mandatory conclusive presumption removes the presumed element from the case after the State has proved the predicate facts giving rise to the presumption. *Francis,* 471 U.S. at 314 n. 2, 105 S.Ct. at 1971 n. 2. In *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), for example, the defendant was charged with knowing conversion of government property. At trial, the judge refused to submit the issue of intent to the jury, ruling that felonious intent could be presumed from the defendant's taking of the property, which was undisputed. *Id.* at 249, 72 S.Ct. at 242. The Supreme Court disagreed, holding that intent was an element of the crime charged and that its existence was a question of fact for the jury. The Court observed:

> A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to

make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.

*Id.* at 275, 72 S.Ct. at 256 (footnote omitted).

Turning to the instant case, McLean argues that NRS § 484.381(1) creates a mandatory rebuttable or conclusive presumption and thus requires that the basic fact lead to the presumed fact beyond a reasonable doubt. *See Ulster County Court,* 442 U.S. at 167, 99 S.Ct. at 2230. Citing authorities regarding blood alcohol content, McLean claims that the statutory presumption fails to meet this exacting standard and is therefore facially unconstitutional.

Recent scholarly authorities submitted by the parties to the district court without objection indicate that the absorption and elimination characteristics of alcohol produce an alcoholic curve. As the blood alcohol content (BAC) increases, there is an upward curve until equilibrium is reached between absorption and elimination; the curve then slopes down as the body eliminates alcohol faster than it is absorbing the same.[2] *See generally* Pariser, *In Vino Veritas: The Truth About Blood Alcohol Presumptions in State Drunk Driving Law,* 64 N.Y.U.L.Rev. 141, 145–51 (1989) [hereinafter *Blood Alcohol Presumptions* ] (discussing alcohol absorption and elimination and BAC curves in the drunk driving context); Fitzgerald & Hume, *The Single Chemical Test for Intoxication: A Challenge to Admissibility,* 66 Mass. L.Rev. 23, 28–31 (1981) (same). Most experts agree that it ordinarily takes forty-five to ninety minutes to attain a peak BAC level on an empty stomach, and two to

---

**2.** The State of Nevada argues that the BAC at the time of a test differs very little from the BAC at the time of the driving offense. *See* Appellee's Answering Br. at 8. Even the scholarly article cited by the State in support of this proposition, however, includes a study in which six of eighteen subjects, or one-third of the sample, reg-

istered a BAC rise between a field test administered by the highway trooper and a breathalyzer test administered sometime thereafter. *See* Loomis, *Blood Alcohol in Automobile Drivers: Measurement and Interpretation for Medicolegal Purposes,* 35 Quart.J.Stud.Alcohol 458, 463–64 (1974).

three hours if alcohol is consumed with or after a meal, while a few contend that the time lag between alcohol consumption and absorption into the blood stream is even longer. *Blood Alcohol Presumptions, supra,* at 147. As McLean argues, then, a BAC measured some time after a driver's arrest actually may be higher than if the test had been administered at the time of arrest, before the peak BAC had been reached. *Id.* at 148–49. Thus, the correlation between one's BAC at the time of arrest and at the time of the test may fail the "beyond a reasonable doubt" standard necessary in cases where the prosecution rests its case entirely on the statutory presumption of NRS § 484.381(1).

We need not decide in this appeal, however, whether NRS § 484.381(1) should be construed as a permissive, rebuttable, or conclusive presumption. In this case, it is clear that the statute was applied as a mandatory conclusive presumption. The trial transcript indicates that the justice of the peace believed he was required to accept NRS § 484.381(1) as a conclusive presumption, regardless of the totality of the facts or the evidence offered by the defendant to rebut the presumption:

> COURT: Before you do that, let me explain to you how I perceive this evidence [the field sobriety tests]; okay? When an individual is charged under the per se statute [NRS § 484.379(1)(b) ], all right, *the bottom line is the chemical test, all right?* And so this evidence [the field sobriety tests] is useful really only to demonstrate that the officer was acting reasonably. In other words, did he have probable cause to make the arrest and ask for the test in the first place.
>
> And so I really am not—*I am really not considering this evidence [the field sobriety tests] to consider whether or not she was under the influence of anything or whether she was so impaired that she'd be convicted of driving while under in [sic] the influence.* I'm only considering it for purposes of did the officer act reasonably.
>
> MR. WATKINS: In all due respect to the court, I think that the field sobriety tests go a little bit more than the probable

cause. In fact, it would be indicative to a degree as to how my client was at the time of driving....

> And I submit to the Court that if the field sobriety test shows that the young lady was, in fact, able to do quite well and be very coherent in response to the trooper, that the Court should, in fact, consider that information in regards to this particular case. Because it's not what the test was 45 minutes later, it was the young lady driving with a certain percentage of alcohol.
>
> ....
>
> COURT: I didn't invite a response at this time, Mr. Watkins. Why don't you continue....

TR 15–16 (emphasis added). Thus, aside from considering facts to determine the reasonableness of McLean's arrest, the trier of fact here refused to consider whether the totality of the evidence rebutted or supported the statutory presumption that McLean's BAC at the time of the test was no less than the BAC at the time of driving. Instead, it conclusively presumed that the test taken three quarters of an hour after McLean's alleged violation established the prohibited amount of alcohol in her blood at the time she was driving.

Absent the statutory presumption, the testimony of the police criminalist and the evidence regarding McLean's conduct at the time of her arrest may have failed to establish beyond a reasonable doubt that the BAC at the time of driving was at least 0.10%. Thus, McLean's constitutional right to have the State prove every element of the crime beyond a reasonable doubt was violated by the conclusive presumption applied by the judge. Accordingly, McLean is entitled to habeas relief.

Although we decline to address the facial constitutionality of the statute, we note that, on its face, the type of presumption § 484.381(1) establishes is subject to varying interpretations. The statute may establish a mandatory conclusive or rebuttable presumption and thus raise serious constitutional questions, because the statute does not indicate that the factfinder is

free to reject the presumption. On the other hand, NRS § 47.230(3) (1991) provides:

> Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that *the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so.* In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt.

(emphasis added). Although this subsection appears to make all criminal presumptions permissive, it is unclear whether this statute applies to a criminal trial held without a jury, such as those conducted in Nevada for first-time DUI offenders like McLean. *See generally Blanton v. City of N. Las Vegas,* 489 U.S. 538, 545, 109 S.Ct. 1289, 1294, 103 L.Ed.2d 550 (1989) (holding that persons charged for the first time for driving under the influence of alcohol, pursuant to NRS § 484.379(1), have no constitutional right to a trial by jury). The Nevada courts might construe NRS § 484.381(1), when read in conjunction with NRS § 47.-230(3), so as to comply with the guarantees of the Due Process Clause, and thus to be constitutional on its face.

In sum, we need not decide today whether the presumption established by NRS § 484.381(1) is facially constitutional, because the statute was applied unconstitutionally in this case. Accordingly, we reverse the denial of the petition for habeas corpus and direct the district court to issue the writ.

REVERSED.