*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TRACI MISKEL,

        *Petitioner-Appellant,*

    *v.*

No. 03-3426

JAMES A. KARNES and DWAYNE MAYNARD,

        *Respondents-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00098—Algenon L. Marbley, District Judge.

Argued: October 27, 2004

Decided and Filed: January 24, 2005

Before: KEITH, CLAY, and BRIGHT, Circuit Judges.[*]

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Stephen E. Palmer, YAVITCH & PALMER, Columbus, Ohio, for Appellant. Lara N. Baker, CITY PROSECUTOR'S OFFICE FOR THE CITY OF COLUMBUS, Columbus, Ohio, for Appellees. **ON BRIEF:** Stephen E. Palmer, YAVITCH & PALMER, Columbus, Ohio, R. William Meeks, Samuel H. Shamansky, Columbus, Ohio, David H. Thomas, LAW FIRM OF R. WILLIAM MEEKS, Columbus, Ohio, for Appellant. Lara N. Baker, CITY PROSECUTOR'S OFFICE FOR THE CITY OF COLUMBUS, Columbus, Ohio, for Appellees.

─────────────────

## OPINION

─────────────────

    CLAY, Circuit Judge. Petitioner Traci Miskel appeals the district court's denial of her petition for a writ of habeas corpus under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Petitioner, who was convicted of driving while having a breath alcohol concentration of 0.10 percent or more, in violation of OHIO REV. CODE § 4511.19(A)(3)

─────────────────

[*] The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

(1998),[1] challenges the trial court's decisions to prohibit cross examination and the presentation of expert testimony on whether the type of breath testing machine used to test Petitioner is generally reliable. Specifically, she asserts that the trial court's rulings on these issues violated her Sixth Amendment rights to confrontation and compulsory process and her Fourteenth Amendment rights to present a complete defense and to have the state prove each element of the offense beyond a reasonable doubt.[2] For the following reasons, we AFFIRM the district court's denial of the writ.

## I. BACKGROUND

On September 7, 1998, the state of Ohio charged Petitioner Traci Miskel with Operating a Motor Vehicle While Under the Influence ("OMVI"), in violation of OHIO REV. CODE § 4511.19(A)(1) (1998)[3], Operating a Motor Vehicle With a Prohibited Concentration of Alcohol ("OMVI *per se*"), in violation of § 4511.19(A)(3) (1998), and speeding, in violation of OHIO REV. CODE § 4511.21(C). A jury in Franklin County Municipal Court convicted Petitioner of OMVI *per se* and speeding but acquitted her of OMVI. The sole elements of OMVI *per se* are (1) operating a vehicle (2) while having "a concentration of [0.10 grams] or more by weight of alcohol per 210 liters of . . . breath."[4] OHIO REV. CODE § 4511.19(A)(3). A traditional OMVI charge, by contrast, requires the prosecution to prove that the defendant was in fact under the influence while driving; the defendant's breath alcohol concentration ("BAC") is not an element of OMVI, but it creates a rebuttable presumption that he was under the influence. § 4511.19(A)(1); *State v. Vega*, 465 N.E.2d 1303, 1307-1308 (Ohio 1984).

During the trial, at which Respondent the Honorable Dwayne Maynard presided, Petitioner sought to cross examine the police officers who performed her breath test, Officers Robert Wetzel and Robert McKelvey, on whether the device they used to measure Petitioner's BAC, the BAC Verifier, is accepted by the scientific community as generally reliable. Petitioner also proffered the expert testimony of Dr. Henry Shamansky, who would testify that the BAC Verifier has come under criticism within the scientific community. Specifically, Petitioner sought to show that the BAC Verifier is susceptible to interference from radio waves and that its conversion ratio from breath alcohol content to blood alcohol content has come into question among scientists.

Judge Maynard denied both requests on the grounds that the general reliability of the BAC Verifier was not a relevant issue in the trial. Judge Maynard based this ruling on the Ohio Supreme Court's decision in *State v. Vega*, 465 N.E.2d 1303 (Ohio 1984), in which the court held that "the accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id*. at 1308. The *Vega* holding, however, expressly permitted cross examination and direct evidence as to whether the defendant was in fact under the influence of alcohol; whether the specific breath testing instrument used on the defendant was reliable; and whether the officer who operated the instrument was qualified to perform the test. *Id*. at 1307. In *Vega*, the court rejected the defendant's claim that the Sixth and Fourteenth Amendments guaranteed him the right to challenge a breath testing machine's general reliability. *Id*. at 1307-1308. Consistent with *Vega*,

---

[1] With an effective date of January 1, 2004, Ohio reduced the minimum breath alcohol concentration to 0.80 percent and redesignated § 4511.19(A)(3) as § 4511.19(A)(1)(d). *See* OHIO REV. CODE § 4511.19, Historical and Statutory Notes (2004). Throughout this opinion, we refer to the 1998 version of the statute because it was in effect at the time Petitioner was charged and convicted.

[2] The district court granted a certificate of appealability as to all of Petitioner's claims.

[3] Now redesignated as § 4511.19(A)(1)(a). *See* OHIO REV. CODE § 4511.19, Statutory and Historical Notes (2004).

[4] Petitioner's breath alcohol concentration ("BAC") was measured as 0.115.

the trial court in this case permitted Petitioner to thoroughly cross examine officers Wetzel and McKelvey as to their qualifications and as to whether they conducted the various performance checks on the machine mandated by the state's health department, which is charged with selecting breath testing machines and assuring their reliability. *See* OHIO ADMIN. CODE §§ 3701-53-01 *et seq*.

On appeal to the Ohio Court of Appeals for the Tenth District, Petitioner asserted that Judge Maynard's decision to preclude a foray into the general reliability of the BAC Verifier was a violation of her Sixth Amendment rights to confrontation and compulsory process and her Fourteenth Amendment rights to present a complete defense and to be convicted only upon proof beyond a reasonable doubt. The appeals court acknowledged that *Vega* involved a traditional OMVI charge – where the defendant's BAC is critical evidence, but not an element of the crime – but concluded that the case was nevertheless controlling in Petitioner's OMVI *per se* trial and affirmed her conviction. *State v. Miskel*, No. 99AP-482, 2000 WL 311920, at *2 (Ohio Ct. App. Mar. 28, 2000) (unpublished opinion). Only a few years before Petitioner's appeal, the appeals court had applied *Vega* to an OMVI *per se* case. *See City of Columbus v. Duling*, No. 96APC07-859, 1997 WL 142502 (Ohio Ct. App. Mar. 31, 1997) (unpublished opinion), *appeal denied*, 683 N.E.2d 787 (Ohio 1997). In Petitioner's case, the appeals court reasoned that it was constrained to do so again. *Miskel*, *supra*.

The Supreme Court of Ohio dismissed Petitioner's appeal as not involving any substantial constitutional question and, on February 1, 2001, she filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Southern District of Ohio. It is the district court's denial of the writ that Petitioner now appeals. As a result of a stay of execution of her sentence during the appeals and habeas process, Petitioner has not served any of the sentence, to wit, 180 days in the Franklin County jail, 177 days suspended for 1 year of probation, and 3 days in an alcohol rehabilitation program. J.A. at 6. Nevertheless, Petitioner is in "custody" within the meaning of 28 U.S.C. § 2254 and therefore has standing to bring this habeas action. *See McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (holding that a habeas petitioner whose sentence of probation was stayed was nonetheless in "custody" for purposes of the federal habeas corpus statute) (citing *Hensley v. Municipal Court*, 411 U.S. 345, 348-49 (1973)). Finally, we note that Petitioner did not object to the magistrate judge's recommendation that the only proper respondent is Judge Maynard; nor does she challenge this recommendation on appeal.[5]

On appeal to this Court, Petitioner presents the same arguments she has advanced throughout – that the state courts' adherence to *Vega* denied her the right to meaningfully cross examine key state's witnesses; to compel witnesses to testify in her favor; to present a meaningful defense; and to be presumed innocent until the prosecution proves each element of the crime beyond a reasonable doubt. Brief of Appellant at 8. We address Petitioner's arguments in turn.

## II. STANDARD OF REVIEW

In a habeas corpus proceeding, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *E.g., Vincent v. Seabold*, 226 F.3d 681, 684 (6th Cir. 2000). We may only overturn the district court and grant a writ of habeas corpus if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

---

[5]Petitioner originally named as respondents James A. Karnes, the Franklin County Sheriff, and Judge Maynard. The magistrate judge found that Sheriff Karnes was not a proper respondent because he did not have custody over Petitioner. *See Reimnitz v. State's Attorney*, 761 F.2d 405, 409 (7th Cir. 1985) (holding that the custodian of a petitioner who is out on bail pending resolution of his habeas proceeding is the municipal court which has jurisdiction over his criminal case) (citing *Hensley v. Municipal Court*, 411 U.S. 345, 351, 353 (1973)).

As a threshold matter, a legal doctrine is not "clearly established Federal law, as determined by the Supreme Court" unless it is based on "holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). A state court's decision is contrary to clearly established Federal law if it (1) arrives at a legal holding that contradicts a Supreme Court precedent or (2) involves facts that are materially indistinguishable from a Supreme Court case but nonetheless arrives at a substantially different result. *Taylor*, 529 U.S. at 405-406. An unreasonable application of clearly established Federal law occurs if "the state court identifies the correct governing legal rules from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular prisoner's case" or if the state court extends a Court precedent to a context where it should not apply, or fails to extend it to a context where it should apply. *Id*. at 406-409.

## III.  DISCUSSION

Initially, we note that the standard of review established by AEDPA is determinative in this case. As debatable as *Vega* may be,[6] we conclude that its application in Petitioner's case was not contrary to or an unreasonable application of clearly established federal law.

*A.  Confrontation Clause*

The first issue we address is whether the trial court's decision to prohibit cross examination on the issue of the BAC Verifier's general reliability was contrary to or an unreasonable application of clearly established federal law.

Petitioner asserts that the trial court violated her right "to be confronted with the witnesses against [her]," U.S. CONST. amend. VI, by precluding cross examination of Officers Wetzel and McKelvey on the issue of whether the BAC Verifier is generally reliable. Brief of Appellant at 24. The trial court did permit Petitioner to cross examine the officers on whether they properly administered the breath test, whether they complied with the Ohio Health Department's mandatory guidelines for operating the test, and whether the specific machine used to test Petitioner was functioning properly and reliably. In upholding the trial court's limitation of cross examination to only these issues, the appeals court reasoned that *Vega* stands for the proposition that the *general* reliability of the BAC Verifier machine is irrelevant. *Miskel*, 2000 WL 311920, at *2 (citing *Vega*, 465 N.E.2d at 1307).[7] There is no indication that the appeals court or the trial court interpreted *Vega* as precluding a challenge to the accuracy and reliability of the specific machine used to test Petitioner. Furthermore, we note that there is no indication that the trial court in fact precluded Petitioner from making such a challenge. Indeed, Petitioner's counsel cross-examined Officers Wetzel and McKelvey regarding the accuracy and reliability of the machine they used to test her breath. *See*, *e.g.*, J.A. at 670-71, 698-702 (trial transcript).

In reviewing the Ohio courts' decisions in this case, we note that the Supreme Court has not confronted a challenge to limits on cross examination imposed pursuant to an OMVI statute or an OMVI *per se* statute. Still, there is important Supreme Court precedent relevant to Petitioner's

---

[6]*See* Stephen E. Palmer, State v. Vega *and Ohio's OMVI Law: Per Se Unconstitutional*, 24 CAP. U. L. REV. 687 (1995) (arguing that *Vega* is unconstitutional because it infringes on the right to present a defense).

[7]The Ohio appeals court did not appear to recognize a distinction between OMVI *per se*, the crime at issue in Petitioner's case, and traditional OMVI, the crime at issue in *Vega*. As discussed *supra*, OMVI requires proof that the defendant was under the influence of alcohol while driving; to establish this element, the prosecution relies on the defendant's BAC measurement, which creates a rebuttable presumption that he was under the influence. *See Vega*, 465 N.E.2d at 1307. But to prove OMVI *per se*, the prosecution need only prove that the BAC measurement itself exceeds 0.10. OHIO REV. CODE § 4511.19(A)(3) (1998). Despite the distinction between the two contexts, we conclude that the court's application of *Vega* in Petitioner's case was not unreasonable.

confrontation clause claim. An essential component of the confrontation clause is the accused's right to cross-examine the state's witnesses. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, the Sixth Amendment "guarantees an *opportunity* for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*). As we have recognized, "a trial court has discretion to limit the scope of cross-examination . . . . This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), *cert. denied*, 532 U.S. 913 (2001) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

In addition, it is the state's prerogative to define what evidence is relevant to the case in the first place. *See Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) (recognizing "the power of the States to define criminal offenses"); *see also Montana v. Egelhoff*, 518 U.S. 37, 58 (1996) (Ginsburg, J., concurring) ("States enjoy wide latitude in defining the elements of criminal offenses.") (citations omitted).[8] Indeed, this Court "must defer to a state court's interpretation of its own rules of evidence and procedure" when assessing a habeas petition. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989) (citation omitted); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The Ohio legislature has committed the determination of whether certain breath testing machines are generally reliable to the state's Director of Health. OHIO REV. CODE § 4511.19(D). On this basis, the trial court determined that the issue of a breath testing machine's general reliability is irrelevant; the only relevant issues, given the conclusion that the machine in general is reliable, are whether the specific machine used to test Petitioner functioned properly and reliably during the particular test in question and whether the officers who operated the machine did so in accordance with the Health Department's regulations. *See Miskel*, 2000 WL 311920, at *2; *see also* OHIO ADMIN CODE §§ 3701-53-01 *et seq.* (establishing guidelines by which officers are to conduct breath tests). The trial court permitted cross examination on all of these issues.

In sum, Petitioner had a full and fair opportunity to challenge the credibility and reliability of the state's witnesses by inquiring as to their qualifications and knowledge about the specific machine's competence during the test performed on Petitioner. Consequently, the limits on cross examination imposed by the trial court did not disable Petitioner from attacking the accuracy and reliability of the specific BAC Verifier used to measure her BAC. Because Petitioner had an "opportunity for effective cross examination," *Fensterer*, 474 U.S. at 20, we hold that the trial court's ruling was not contrary to or an unreasonable application of clearly established federal law.

## B. Compulsory Process and the Right to Present a Defense

The next issue we consider is whether the trial court's refusal to admit expert testimony on the issue of the BAC Verifier's general reliability was contrary to or an unreasonable application of clearly established federal law.

Under AEDPA, if there is *no* "clearly established Federal law, as determined by the Supreme Court" that supports a habeas petitioner's legal argument, the argument must fail. *See* 28 U.S.C. § 2254(d)(1); *Taylor*, 529 U.S. at 412. Petitioner's argument that she has a constitutional right to present the expert testimony of Dr. Shamansky as to the general reliability of BAC Verifiers suffers from this deficiency. Petitioner points to two provisions of the Constitution as independent sources of this purported right – the Sixth Amendment's compulsory process clause and the Fourteenth

---

[8]Petitioner does not challenge the constitutionality of the OMVI *per se* statute. Consequently, the question whether Ohio may constitutionally proscribe the act of driving with a BAC in excess of 0.10 is not before us. *See Jackson*, 443 U.S. at 324 n.16 ("Whether the State could constitutionally make the conduct at issue criminal at all is, of course, a distinct question.") (citations omitted).

Amendment's due process clause, specifically, the right to present a complete defense. *See* Brief of Appellant at 30, 32.

As authority for her claim, Petitioner relies solely on *California v. Trombetta*, 467 U.S. 479 (1984). Brief of Appellant at 32-38. In *Trombetta*, the Supreme Court rejected the defendants' claim that the state police's failure to preserve their breath samples denied them the ability to impeach the results of the breath testing machine used to determine their BAC. *Trombetta*, 467 U.S. at 482-83, 491. The Court styled *Trombetta* as an "access-to-evidence" case in the vein of such cases as *Brady v. Maryland*, 373 U.S. 83 (1963) (establishing a criminal defendant's constitutional privilege to obtain evidence in possession of the prosecutor that is material to the defendant's guilt) and *United States v. Agurs*, 427 U.S. 97 (1976) (imposing on prosecutors the constitutional duty to disclose exculpatory evidence to the defendant). *Trombetta*, 467 U.S. at 485-86. Nevertheless, Petitioner maintains that *Trombetta* squarely resolves the issue presented here in her favor. For this conclusion, Petitioner points to a footnote in the Court's opinion in which the Court observes:

> The materiality of breath samples is directly related to the reliability of the Intoxilyzer [a breath testing machine] itself. The degree to which preserved samples are material depends on how reliable the Intoxilyzer is. This correlation suggests that a more direct constitutional attack might be made on the sufficiency of the evidence underlying the State's case. After all, if the Intoxilyzer were truly prone to erroneous readings, then Intoxilyzer results without more might be insufficient to establish guilt beyond a reasonable doubt.

*Id.* at 489 n.10 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Petitioner asserts that by this language, the Court "presumes that a defendant ha[s] a constitutional right to attack the reliability of the breath testing machine." Brief of Appellant at 33.

There are two serious flaws with Petitioner's reading of *Trombetta*. First, assuming Petitioner is correct to read such significance into a footnote of a Supreme Court opinion, the Court's subsequent description of what the purported constitutional right entails undermines her argument. To impeach the machine's credibility, the Court observed in *Trombetta*, the defendants could have inspected the machine and its calibration results. 467 U.S. at 490. To challenge the machine's measurements during the test in question, the defendants "identified only two sources capable of interfering with test results: radio waves and chemicals that appear in the blood of those who are dieting." *Id.* "For defendants whose test results might have been affected by either of these factors," the Court continued, "it remains possible to introduce at trial evidence demonstrating that the defendant was dieting *at the time of the test or that the test was conducted* near a source of radio waves." *Id.* (emphasis added). Finally, to expose operator error, "the defendant retains the right to cross-examine the [officer] who administered [the test], and to attempt to raise doubts in the mind of the factfinder *whether the test was properly administered*." *Id.* (emphasis added).

Thus to the extent the *Trombetta* Court contemplated a constitutional right to challenge a breath test's reliability, the right it constructed is plainly targeted at the *specific* testing machine in question; indeed, the Court makes no mention of attacking the general reliability of a certain model of testing device. Consequently, *Trombetta* is not inconsistent with *State v. Vega* and Ohio's OMVI *per se* regime. Petitioner does not suggest that the court precluded her from showing that the specific location where her breath test occurred, the police station, is particularly vulnerable to radio wave interference or that the BAC Verifier used to test her did in fact encounter such interference. Petitioner's proffer of Dr. Shamansky's testimony was phrased by counsel as addressing the machine's "general scientific reliability." J.A. at 713. In any event, Petitioner's counsel did question officer McKelvey about whether he checked for radio wave interference prior to conducting the test on Petitioner. *Id.* at 698-702. Petitioner's counsel also inquired whether the specific machine used to test Petitioner provides accurate results. *Id.* at 670-71, 702.

The second flaw with Petitioner's reading of *Trombetta* is that it is based on *dicta*, rather than the Court's holding, which was that the state need not preserve breath sample results when it intends to introduce the results of a breath test at trial. *Trombetta*, 467 U.S. at 491. Consequently, to the extent there is any merit to Petitioner's argument, it is foreclosed in the habeas context. *Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("[C]learly established Federal law, as determined by the Supreme Court [includes only] holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.").

We note in closing that the district court relied on a more recent decision of the Supreme Court to deny Petitioner's claim that the trial court denied her the right to present a defense. *See United States v. Scheffer*, 523 U.S. 303 (1998) (plurality opinion). In *Scheffer*, the Court held that a *per se* ban on polygraph evidence in military trials does not violate the right to present a defense even where a defendant's polygraph results may support his theory of the case. *Id*. at 305, 307. The *Scheffer* plurality recognized that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials . . . [and] the exclusion of evidence [is] unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id*. at 308. Further, the plurality noted that in each case where "a weighty interest of the accused" was infringed, the exclusion of evidence seriously undermined "fundamental elements of the defendant's defense" against the crime charged. *Id*. at 315-17. In Petitioner's case, just as in *Trombetta*, there were various effective means of challenging the accuracy and reliability of *her* breath test without putting the reliability of BAC Verifiers in general at issue.

In sum, we hold that the trial court's refusal to admit Petitioner's proffered expert testimony on the issue of the BAC Verifier's general reliability was not contrary to, nor an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1); *Taylor*, 529 U.S. at 412.

*C.  Unconstitutional Presumption*

The final issue we consider is whether the trial court required the jury to presume that the result of Petitioner's breath test was accurate, thereby enabling the state to avoid its constitutional obligation of proving, beyond a reasonable doubt, that Petitioner's BAC exceeded 0.10. *See* OHIO REV. CODE § 4511.19(A)(3) (1998).

Presumptions are evidentiary devices that enable a factfinder to presume the existence of an "ultimate" or "elemental" fact upon proof of "evidentiary" or "basic" facts. *County Court of Ulster v. Allen*, 442 U.S. 140, 156 (1979). The Supreme Court has identified three types of presumptions in criminal cases: permissive, mandatory rebuttable, and mandatory conclusive. *Id*. at 157-58. A permissive presumption places no burden on the defendant but permits the jury to "infer the elemental fact from proof by the prosecutor of the basic one." *Id*. at 157. Permissive presumptions comport with due process unless the inferences they motivate are irrational. *Id*. Mandatory rebuttable presumptions "tell[] the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *Id*. (citations omitted). Finally, a mandatory conclusive presumption simply removes the defendant from the evidentiary process and requires the factfinder to find an ultimate or elemental fact as true once the prosecution has offered sufficient proof of the basic fact. *Francis v. Franklin*, 471 U.S. 307, 314 n.2 (1985). Mandatory presumptions – whether rebuttable or conclusive – will only be sustained if proof of the basic fact leads factfinders to find the presumed fact beyond a reasonable doubt. *Allen*, 442 U.S. at 167.

It is fair to say that the Supreme Court has viewed mandatory presumptions in criminal cases with much skepticism. *See*, *e.g.*, *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979); *Allen*, 442 U.S. at 157 ("A mandatory presumption is a far more troublesome evidentiary device."). Yet to

determine whether such skepticism is warranted in this case, we must first determine whether the trial court imposed a mandatory presumption in the first place. Ohio's OMVI *per se* statute provides: "No person shall operate any vehicle . . . [if] the person has a concentration of [0.10 grams] or more by weight of alcohol per [210 liters] of his breath." OHIO REV. CODE § 4511.19(A)(3) (1998). Further, the statute provides that "the court may admit evidence on the concentration of alcohol in the defendant's . . . breath . . . at the time of the alleged violation as shown by chemical analysis of the [breath] withdrawn within two hours of the time of the alleged violation." § 4511.19(D)(1). Any analysis of a defendant's breath "shall be . . . in accordance with methods approved by the director of health" and performed "by an individual possessing a valid permit issued by the director." *Id.*

Thus the statute does not create a presumption on its face; yet Petitioner asserts that the trial judge's evidentiary rulings created one in effect. Petitioner's argument runs as follows: The Ohio Supreme Court's holding in *Vega*, and the court's application of it in Petitioner's case "establish[ ] an unconstitutional presumption that the machine was reliable and the test result was accurate." Brief of Appellant at 41. The jury, however, was not instructed to presume Petitioner's guilt of the offense on the basis of the breath test. Moreover, contrary to Petitioner's assertion that *Vega* removed the issue of a breath test's reliability from the factfinder's domain, the specific machine's reliability was very much an issue at Petitioner's trial. Indeed, Petitioner's counsel cross-examined officers Wetzel and McKelvey on this issue. Finally, the judge's instruction to the jury commits the issue of the test's reliability to the jury's judgment and plainly places the entire burden on the prosecution:

> Before you can find this defendant guilty, you must find, beyond a reasonable doubt, that . . . the defendant operated a vehicle . . . with a concentration of [.10 grams] or more by weight of alcohol per 210 liters of breath. The facts in this case allege a test of .115 of one gram by weight of alcohol per 210 liters of her breath. . . . I have admitted the results of a chemical test administered to the defendant to determine the concentration of alcohol in her system. You must evaluate all the evidence presented regarding the test and its accuracy.
> ...
> If you find that the State, in this case, proved beyond a reasonable doubt all the essential elements of [sic] offense of operating a vehicle with a prohibited concentration of alcohol in her system, your verdict in this case must be guilty. If you find that the State failed to prove beyond a reasonable doubt any of the essential elements of the offense . . . then your verdict must be not guilty.

J.A. at 859-60 (instructions to the jury). In view of these realities, we cannot conclude that the jury was encouraged to presume any particular fact, let alone an elemental or ultimate one.

Nor are we persuaded by Petitioner's reliance on a Ninth Circuit case in which the court struck down the application of a Nevada OMVI statute in a manner that established a mandatory conclusive presumption. *See McLean v. Moran*, 963 F.2d 1306, 1310 (9th Cir. 1992). In the first place, *McLean* was decided prior to the enactment of AEDPA; the petitioner in *McLean*, therefore, did not need to prove that the trial court's decision was contrary to or an unreasonable application of clearly established federal law. Furthermore, the statute at issue in *McLean* created a presumption on its face: "In any criminal prosecution for a violation of [Nevada's OMVI statutes] in which it is alleged that the defendant was driving . . . while he had 0.10 percent or more by weight of alcohol in his blood, the amount of alcohol shown by a chemical analysis of his blood, urine, breath, or other bodily substance *is presumed to be no less than the amount present at the time of the alleged violation.*" *Id.* at 1308 (quoting NEV. REV. STAT. § 484.381(1) (1991)) (emphasis in *McLean*). Finally, because the justice of the peace in *McLean* instructed the jury that the presumption was conclusive "regardless of the totality of the facts or the evidence offered by the defendant to rebut

[it]," the Ninth Circuit concluded that, as applied to the facts of the case, the statute violated the defendant's constitutional right to have the state prove every element of the crime beyond a reasonable doubt. *Id*. at 1310. *McLean* is therefore distinguishable from the present case.[9]

We are better guided by a recent decision of the Tenth Circuit, in which the court upheld an OMVI *per se* ordinance against a habeas petitioner's assertion that it created an unconstitutional presumption. *Welch v. City of Pratt*, 214 F.3d 1219, 1223-24 (10th Cir. 2000). Like the petitioner in *McLean*, the petitioner in *Welch* argued that the ordinance and jury instruction had the effect of forcing the jury to presume that he had the same BAC while driving as he had when his BAC was actually measured some time later. *Welch*, 214 F.3d at 1222-23. The ordinance at issue in *Welch* provided: "No person shall operate or attempt to operate any vehicle within this city while . . . [t]he alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is [.08] or more." *Id.* at 1223 (citation omitted). In his jury instruction, the judge restated the ordinance and explained that the state had the burden of proof. *See id.* The Tenth Circuit held that the instruction made clear the prosecution's burden to prove that the defendant, "*while driving*," had a BAC that exceeded the limit. *Id*. at 1225. Just as in *Welch* – and in contrast to *McLean* – the jury in Petitioner's case was apprised of the state's burden and, moreover, was instructed to "evaluate all the evidence presented regarding the test and its accuracy." J.A. at 859-60.

In conclusion, we re-emphasize the significance in this case of the highly deferential AEDPA standard of review. Petitioner relied exclusively on a distinguishable Ninth Circuit case from the pre-AEDPA era to support her claim that her conviction resulted from an unconstitutional presumption. Because this is not "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), we must affirm the district court's dismissal of this claim as well.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the writ.

---

[9]We observe that this Court has upheld the use of a similar presumption where the judge made it clear to the jury that the presumption was rebuttable. *See Morgan v. Shirley*, 958 F.2d 662, 668-70 (6th Cir. 1992). In this case, as our discussion indicates, there was *no* presumption of any kind – either in the statute or the jury instructions – and Petitioner had ample means of rebutting the state's evidence.