**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

JUAN ANTONIO ZAVALA,
                    *Defendant-Appellant.*

No. 05-30120

D.C. No.
CR-02-00079-12-
BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Submitted March 8, 2006*
Portland, Oregon

Filed April 11, 2006

Before: Ferdinand F. Fernandez, A. Wallace Tashima, and
Richard A. Paez, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Fernandez

---

*The panel unanimously finds this case suitable for decision without
oral argument. Fed. R. App. P. 34(a)(2).

**COUNSEL**

Dennis M. Charney, Eagle, Idaho, for the defendant-appellant.

Monte J. Stiles, Assistant United States Attorney, Boise, Idaho, for the plaintiff-appellee.

## OPINION

PER CURIAM:

Juan Antonio Zavala appeals the sentence that was imposed upon him after he was convicted of conspiracy to distribute or to possess with intent to distribute methamphetamine and of distribution of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. His sole claim on appeal is that the district court violated *Booker*[1] when it "presumed" that the advisory Sentencing Guideline calculation set forth the proper range for sentencing. We vacate the sentence and remand.

## BACKGROUND

After Zavala was convicted, the sentencing process took hold, but before it was complete the Supreme Court decided *Booker*. The parties and the district court were well aware of that fact. Because it knew that it must consult the Sentencing Guidelines, which were now advisory, the district court then issued a presentencing order in which it calculated the Guideline range. That calculation generated a life sentence as the "range."[2] At the commencement of the sentencing hearing, the district court assumed that the calculated "Guideline range becomes a presumptive sentence," and the court must then decide if the other factors in 18 U.S.C. § 3553(a) "would justify the Court in imposing a lesser sentence than that set forth in the Guideline range." Moreover, the district court declared that the burden was on Zavala to explain any justification for imposing a different sentence—one below life imprisonment.

The government then argued for a life sentence. When

---

[1]*See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

[2]Pursuant to the Guidelines, the offense level was 43 and the criminal history category III. USSG §§ 2D1.1, 3B1.1. All references are to the November 2004 version of the Sentencing Guidelines.

Zavala's attorney's turn to address the district court came around, he started by noting that the court had commented that the Guideline range was the "presumptive sentence." The court rejoined: "Well, in the sense that it is a Guideline. . . . So that's the starting point." Counsel started to argue the point, but the district court said: "Wait, wait, wait, counsel. . . . [A]lthough the Supreme Court in *Booker* and *Fanfan* said that they are advisory . . . they still clearly indicated, in fact I think they used the language that 'the majority'—they may even have used the words 'the vast majority'—of the sentences may fall within the Guideline range. . . . How then can I say the starting point is not the Guideline range, but, rather, the statutory minimum?"

The argument went on, with counsel insisting that the starting point should be the statutory minimum. Finally, the district court came to the sentencing itself and explained its thinking as follows:

> I am most impressed by the Supreme Court's suggestion in *Booker* and *Fanfan*; that the majority or vast majority of sentences will still fall within the Guideline range is an indication that, although the Guidelines are now advisory, that they should provide the starting point of our evaluation, and the Court should then determine whether there is some grounds for a non-Guidelines-based departure or non-Guidelines-based deviation because the Guidelines, when applied in this case, are not justified in terms of 3553(a) and all of the factors listed.

> So, I think the "sufficient but not greater than necessary" to accomplish those purposes really is language which we use to answer that question of whether there is in fact a need to impose the Guideline range or something less or something more.

> But I think it is clear, at least in my mind, and it will be my view until I am persuaded by the Court

> of Appeals or the Supreme Court that I am incorrect, that we start with the Guideline range and then work from that to determine whether there are facts in this case unique to this case which justify the Court in disregarding the Guideline range, or at least deviating from the Guideline range in some fashion.

The district court then went on to consider the 18 U.S.C. § 3553(a) factors and came to the ultimate conclusion that Zavala's sentence should be thirty years' imprisonment, rather than imprisonment for life. The court then stated that the difference would amount to no more than a one-level reduction of Zavala's criminal offense level according to the Guideline table.[3]

Zavala then appealed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) because Zavala's claim here is that the sentence was imposed in violation of law due to the district court's misconception that the calculated Guideline range was the presumptive sentence. *See United States v. Beck*, 418 F.3d 1008, 1011, 1016 (9th Cir. 2005); *see also United States v. Sahanaja*, 430 F.3d 1049, 1050 (9th Cir. 2005); *United States v. Cirino*, 419 F.3d 1001, 1002 (9th Cir. 2005) (per curiam).

"[A]fter *Booker* we continue to review the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [a] case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (internal quotation marks

---

[3]*See* USSG Ch.5, Pt.A.

omitted, second alteration in original). Similarly, we review the district court's construction of the sentencing statute—18 U.S.C. § 3553(a)—de novo. *See United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc); *United States v. Auld*, 321 F.3d 861, 863 (9th Cir. 2003). And, we review the ultimate sentence for reasonableness. *See Booker*, 543 U.S. at 264, 125 S. Ct. at 767; *Cantrell*, 433 F.3d at 1280.

## DISCUSSION

As we have already noted, Zavala asserts that his sentence was legally improper because the district court's whole approach was adversely affected when it treated the Guideline calculated sentence as *the* presumptive sentence. In fact, he asserts, even treating it as a starting point was legal error. We agree in part.

The Guidelines are, no doubt, entitled to credence. They are an attempt to indicate that, based on experience, in the mine run of cases a defendant who has a certain kind of background and who has participated in a certain kind of crime in a certain way should receive a sentence within a certain range. There can be many, many differences between defendants and that is why "in the mine run" is central to the above statement.

**[1]** We know, of course, that the Guidelines are not, and cannot be, binding on sentencing judges. Rather, a judge must consider many things besides the Guidelines themselves, that is: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," to deter, "to protect the public," and to provide rehabilitation; "the kinds of sentences available"; the need to avoid sentencing disparities; and the need to provide victims with restitution. 18 U.S.C. § 3553(a)(1), (2), (3), (6), (7). But in that regard, the Sentencing Commission presumably considered all of those factors when it proposed the

Guideline ranges—indeed, it had to do so and it says that it did. *See* 28 U.S.C. § 994; USSG §1A1.1 & ed. n.

**[2]** And in ultimately upholding the constitutionality of the Guidelines, the Supreme Court stated: "Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Booker*, 543 U.S. at 259, 125 S. Ct. at 764. Thereafter the Court went on to say:

> As we have said, the Sentencing Commission remains in place, writing Guidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly. The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.

*Id.* at 264, 125 S. Ct. at 767 (citation omitted); *see also Cantrell*, 433 F.3d at 1279 ("[T]he Guidelines are now advisory.").

That said, we must consider how a district court should "consult" and use the advisory Guideline calculation when it decides a case. In doing so, let us first say what this issue is not: It is not a question of whether a reviewing court should entertain a presumption that a sentencing decision which does fall within the Guideline range is reasonable. Many have said that reviewing courts should do just that. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam); *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006); *United States v. Williams,* 436 F.3d 706, 708 (6th Cir. 2006); *United States v. Welch*, 429 F.3d 702, 705 (7th Cir. 2005); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir.), *cert. denied*, ___ U.S. ___, 126 S. Ct. 840, 163 L. Ed. 2d 715 (2005); *see also United States v. Mares*, 402 F.3d 511, 519 (5th Cir.) (if discretion exercised properly, a Guideline range

sentence rarely unreasonable), *cert. denied*, ___ U.S. ___, 126 S. Ct. 43, 163 L. Ed. 2d 76 (2005). *Contra United States v. Jimenez-Beltre*, ___ F.3d ___, ___, 2006 WL 562154, at *2 (1st Cir. Mar. 9, 2006) (en banc) (no presumption); *United States v. Cooper*, 437 F.3d 324, 331-32 (3d Cir. 2006) (same); *United States v. Crosby*, 397 F.3d 103, 114-15 (2d Cir. 2005) (same), *abrogated in part on other grounds by United States v. Fagans*, 406 F.3d 138, 142 (2d Cir. 2005). We have not yet opined on that question, and will not do so now. We will focus solely on the issue of how a district court should approach its duties.

**[3]** In that respect, we have already said that a district court should use the Guidelines as a "starting point." *Cantrell*, 433 F.3d at 1280; *see also United States v. Menyweather*, 431 F.3d 692, 696-97 (9th Cir. 2005). But what is that? Is it the same as a presumption? We think not; at least not in a legal sense. One can use the word "presumption" in a rather loose or colloquial sense. "Dr. Livingstone, I presume," is a fairly weak statement as far as the law is concerned. So too is merely venturing that something is so, or assuming it so based on limited information. In law, once we start talking about presumptions, we usually mean something more than that. Certainly, there can be a "bursting bubble" presumption, which disappears if anything to the contrary is placed before the court. *See Nunley v. City of L.A.*, 52 F.3d 792, 796 (9th Cir. 1995). Then, there can be a mandatory conclusive presumption, which precludes any contrary information from being placed before the court. *See United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994). In between are mandatory rebuttable presumptions, which always have some weight although other information may well overcome them in a particular case.[4] *See id.*

---

[4]We, of course, do not overlook permissive presumptions, which can actually be called permissive inferences. *McLean v. Moran*, 963 F.2d 1306, 1308 (9th Cir. 1992). Those are not of concern here.

In this area, were a presumption proper, we suppose it would be a mandatory rebuttable presumption. But even that is more than a mere starting point because it gives particular weight to the thing presumed. It would indicate that the Guideline range *is* to be used unless (by some evidentiary standard) a party can prove the contrary. *Id.* That is much more than a mere consult for advice, and the Guidelines are to be no more than that. *See Booker*, 543 U.S. at 264, 125 S. Ct. at 767. If a district court presumed that the sentence should be a Guideline range sentence, it would thereby make it much more than something to be consulted and would give it much heavier weight than § 3553(a) now does.[5] That leaves it as a factor in the sentencing alchemy. *Id.*

[4] On the other hand, when faced with a statute with its own sentencing range—say distribution of 50 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A), with punishment of imprisonment for not less than 10 years and not more than life—the court's consideration of the proper sentence must start somewhere. In the above example, to say that should be 10 years or life makes very little sense. We are satisfied that it is highly unlikely that a sentencing court would (or could) approach its task in that manner. But for the court to start with the advice that it *must* consider—the Guideline calculation—makes a good deal of sense. That is at least a point that has been fixed after consideration of the various sentencing factors in § 3553(a). And if there is more information about the particular individual before the court, nothing discourages the consideration of that; nor can anything discourage it. To do so would come parlously close to reinstituting the very rigid restraints on sentencing that caused the unpruned sentencing statute to be unconstitutional in the first place. *See Booker*, 543 U.S. at 233, 125 S. Ct. at 750 (noting

---

[5]A different approach would tend to make the adjective "mandatory" renascent. *See United States v. Strange*, 370 F. Supp. 2d 644, 650 & n.7 (N.D. Ohio 2005); *Simon v. United States*, 361 F. Supp. 2d 35, 40-41 (E.D.N.Y. 2005).

that if the Guidelines had been "merely advisory provisions" they would not have been constitutionally defective, but, unfortunately, they were "mandatory and binding"); *see also United States v. Kortgaard*, 425 F.3d 602, 605 (9th Cir. 2005). Simply put, a presumption at the district court would give undue weight to the Guidelines. The dangers averted by declaring them to be merely advisory would become recrudescent.

Some might say that this is just semantics and that the same process will take place regardless of what we call it, but that is unduly cynical. We recognize that when one chooses a starting point, if nothing appears that would suggest movement beyond that point, it also becomes the finishing point. Thus, in that instance, it does look a bit like a presumption. Still, it only looks that way because in that discrete instance there is a single possible reasonable sentence pointed to. That is an exception.

Yet that exception does more than test the rule; it truly does prove it. While an appellate court will review the sentencing result to see if it comes within the extended territory of reasonableness, and will merely conduct a periplus of the borders of that territory, the district court has a very different charge. It is sentencing an individual, and its task is to attempt to find the most reasonable sentence for that person within the territory of all possible reasonable sentences. That difference in charge is central; it is not simply semantical. The difference in approach can be captured in the difference between starting points and presumptions. The former bespeak a mind open to all of the nuances and possibilities of the human condition that district judges are so good at perceiving. The latter bespeaks a mind which is rather closed unless it can be pried open by something truly extraordinary. It harkens back to Guideline "departures," which were expected to be quite extraordinary. *See* USSG §1A1.1 ed. n.4(b). To put it another way, even though it is very likely that the Guideline calculation will yield a site within the borders of reasonable sentenc-

ing territory, that still does not mean either that there are no other sites within those borders, or that one of them will not prove to be the most reasonable sentence for the particular individual, or that the district court should resist being led to another site, or that the district court should not strive to reach the best site.

**[5]** If a district court does show a kind of resistence and, instead, makes the Guideline calculation *the* presumptive sentence, it will commit legal error by misapplying § 3553(a), which now makes the Guideline a, but only a, factor to be considered. It will fail to embrace the discretion that it has, which is to reach the right answer to the sentencing decision rather than a merely plausible answer. Perhaps we will never know whether the answer reached is actually better or worse than the Guideline calculation, but that is true whenever there is discretion. We are neither beasts nor angels, and our power to do good always entails the possibility that something ill will result.

**[6]** In short, *Booker* has resuscitated the much-lamented discretion that the sentencing statute seemed to take away from district courts, and has at least partially restored that halcyon condition that district judges have longed for these many years. District courts neither should, nor can, ignore that by placing undue weight on the Guideline portion of the sentencing chemistry. They must properly use the Guideline calculation as advisory and start there, but they must not accord it greater weight than they accord the other § 3553(a) factors. Rather, they must consider all of the information before them, as they used to do, and then reach for the correct sentence under all of the circumstances. For our part, we will then review the ultimate result for reasonableness. *See Booker*, 543 U.S. at 264; 125 S. Ct. at 767; *Cantrell*, 433 F.3d at 1280-81.

That said, we must consider what the district court did in this case. The court thoughtfully attended to Zavala's sentencing, considering all of the relevant § 3553(a) factors. And yet,

we cannot say with any confidence that the district court did not treat the Guideline calculation as a presumptive sentence, rather than a mere "starting point."

The sentencing transcript leaves us with the unsettling feeling that the district court viewed the Guideline calculation not as one of several factors to be considered equally, but as a locus from which to deviate. The court repeatedly referred to a process of "departing" from the Guideline range. More troubling still, the court placed the onus on Zavala to provide reasons for deviating downward from the Guideline range, opining, "I think the burden is upon, I think, the Defense to at least explain to me what those justifications are and what those factors are that will justify the Court in imposing a sentence short of life imprisonment."

**[7]** In essence, it appears the district court treated the Guideline calculation as a presumptive sentence from which it had discretion to depart, if the defendant provided satisfactory reasons. The court's approach brings us perilously close to the mandatory Guidelines regime squarely rejected by the Supreme Court in *Booker*. We therefore hold that the district court erred in sentencing Zavala.

**[8]** Zavala objected to the district court's characterization of the Guideline calculation as a presumptive sentence. Where a defendant has preserved an error of a nonconstitutional nature, we will reverse unless the error is harmless, i.e., "unless it is more probable than not that the error did not materially affect the verdict." *United States v. Gonzales-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005) (internal quotation marks omitted). The government bears the burden of demonstrating harmlessness, "and in the rare case in which we find ourselves in equipoise as to the harmlessness of the error, reversal is required." *Id.* The government cannot meet its burden of showing that the error here was harmless. We must vacate Zavala's sentence and remand to the district court for resentencing.

## CONCLUSION

In the post-*Booker* sentencing world, district courts have an obligation to consult the Sentencing Guidelines. But a Guideline calculation is simply *one factor* to be considered when selecting the most appropriate sentence for a particular defendant. Nothing in 18 U.S.C. § 3553, as it stands after *Booker*, indicates that the Guidelines are to be given any greater weight than their fellow sentencing factors.

Here, the district court gave the Guideline calculation exaggerated weight, treating it as a presumptive sentence from which the court was "free to depart." This was error. Because we are not satisfied that the error was harmless, we vacate Zavala's sentence and remand to the district court for resentencing.

**VACATED** and **REMANDED**.

---

FERNANDEZ, Circuit Judge, Dissenting:

I respectfully dissent because it is quite clear to me that the district court simply used the Sentencing Guideline calculation as a starting point, and we have already declared that it is proper for a court so to do. *See United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006); *see also United States v. Menyweather*, 431 F.3d 692, 696-97 (9th Cir. 2005).

I recognize that the district court's language was not entirely felicitous. That is not surprising because this sentencing came during the first few months after *Booker* was decided. Still and all, despite the use of the word "presumption," the district court explained that it meant "starting point" when it said that. Similarly, the district court used the word "departure," which was unfortunate because that implies something more rigid than the regime we now live in. But,

even there, the court indicated that it was merely grasping for a label, for it quickly added "or . . . deviation."

As I see it, the district court meant what it said; after all, it did deviate from the strict Guideline calculation, although Zavala had personally advanced the methamphetamine conspiracy by selling at least 42 pounds of a mixture or substance containing methamphetamine. Were I in doubt, I would take the district court at its word, as I think we ought generally to do. *See McGuckin v. Smith*, 974 F.2d 1050, 1056 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Cont'l Connector Corp. v. Houston Fearless Corp.*, 350 F.2d 183, 189 (9th Cir. 1965).

That being so, while I cannot say that I am in disagreement with the presumption exegesis in the per curiam opinion, I do not join it. Whatever other readers of the opinion might think of it, whether they consider its reasoning eximious or exiguous, I deem it extraneous. It cannot affect my decision of this case.

Thus, I respectfully dissent.