NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0768n.06
Filed: September 1, 2005

Case No. 04-6494

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| HILARY M. BECK, | ) | DISTRICT OF KENTUCKY |
| aka HILLARY M. BECK, | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER and GRIFFIN, Circuit Judges; GADOLA[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Hilary M. Beck appeals

the sentence imposed after he pled guilty to one count of failing to file a tax return in violation of

26 U.S.C. § 7203. Specifically, Beck argues that the magistrate judge erred by sentencing him under

the mandatory guidelines system in place at the time of his sentencing and in denying his motion for

a downward departure under U.S.S.G. § 5H1.4 and/or U.S.S.G. § 5K2.0. We conclude that the

sentencing order must be VACATED and the matter REMANDED for re-sentencing.

**I.**

On September 12, 1994, personnel with the Examination Division of the Internal Revenue

Service ("IRS") began investigating Beck, a self-described tax protestor who believes that income

taxes are illegitimate. In the ensuing investigation the IRS determined that he had failed to file tax

---

[*]The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

returns for the years 1990, 1991, 1992, and 1993. The IRS therefore prepared substitute returns based on income information received from Beck's employers. On December 2, 1996, personnel with the Collection Division of the IRS contacted Beck and began efforts to collect the tax assessments against him. Beck responded by sending the agents a letter describing his personal interpretation of the relevant tax statutes and explaining his philosophy of protesting the tax laws. Over the course of the next few years, agents from the Collection Division continued to investigate Beck. This investigation, initially aimed at collecting delinquent taxes, culminated in August 2000 in an investigation by the Criminal Investigation Division of the IRS, which determined that Beck had failed to file income tax returns for the years 1990 through and including 2002.

On April 14, 2004, Beck was indicted on three counts of failure to file a tax return for the calendar years 1997, 1998 and 1999, all in violation of 26 U.S.C. § 7203. Shortly thereafter, at Beck's request, the case was assigned to Magistrate Judge Gregory Wehrman. On June 17, 2004, the magistrate judge allowed Beck to plead guilty to count two of the indictment—misdemeanor failure to file a tax return for the calendar year 1998—pursuant to a written plea agreement. In exchange for the guilty plea, the government agreed to dismiss the remaining counts in the indictment at the time of sentencing.

As part of his plea agreement, Beck admitted that he willfully failed to file an individual income tax return in 1998, and that he owed the federal government income and social security self employment taxes in the amount of $32,761.00. Beck also admitted failing to file any income tax returns for the years 1990 through and including 2002. Because he agreed to file individual income tax returns for the years 2000 through 2002 prior to sentencing, the parties agreed on a relevant conduct figure of $157,482.00, which represents the total tax loss for the years 1990 through 1999.

Beck waived his right to appeal and his right to collaterally attack his guilty plea and conviction; however, he retained his right to appeal and collaterally attack his sentence.

Prior to his sentencing, on November 24, 2004, Beck filed a motion for a downward departure based on his alleged "extraordinary physical impairment" pursuant U.S.S.G. § 5H1.4, or in the alternative, a combination of mitigating factors under U.S.S.G. § 5K2.0.[1] On November 29, 2004, Beck also filed a "Notice of Issues Under Blakely vs. Washington," which the magistrate judge construed as an objection to the application of the Sentencing Guidelines.

At sentencing on December 3, 2004, the magistrate judge indicated that he had carefully reviewed the medical testimony, and the submissions and legal arguments of the parties regarding U.S.S.G. §§ 5H1.4 and 5K2.0. The magistrate judge concluded that Beck's medical conditions and any other mitigating factors placed him neither in an extraordinary category nor outside the heartland of similar cases under the Sentencing Guidelines, and that the Bureau of Prisons could efficiently accommodate Beck's medical needs. The magistrate judge therefore declined to exercise his discretion to grant Beck a downward departure under the Sentencing Guidelines. Pursuant to this court's pre-*Booker* decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc), the magistrate judge chose to sentence Beck under the mandatory sentencing guideline system in place at the time of Beck's sentencing, and to impose an alternative non-guidelines sentence.

---

[1]According to Beck's personal physician, Dr. Robert L. Baker, Jr., Beck suffers from the following medical conditions: postpolio syndrome, curvature of the spine, two herniated discs in his neck, hypertension (high blood pressure), cardiomyopathy (progressive heart disease) with associated biventricular heart failure, chronic atrial fibrillation, obstructive sleep apnea, pulmonary hypertension, foot and ankle edema, and gross obesity. Beck's conditions require him to use a cane to walk or wheelchair; to visit a chiropractor every couple of weeks; to sleep on a recliner in an inclined position and use a BiPAP machine to keep his airways open; and to use a total of 7 prescription medications. During a sentencing hearing held on November 30, 2004, the government presented the testimony of Dr. Michael Growse, clinical director of the Federal Medical Center of the Bureau of Prisons located in Lexington, Kentucky, who explained that the Federal Medical Center can "accommodate" any of Beck's medical conditions. Dr. Growse also opined that based on the many cases that he is required to supervise at the prison, Beck's conditions are not "extraordinary."

The applicable sentencing guideline for a violation of 26 U.S.C. § 7203 is found in U.S.S.G. § 2T1.1. Under the 1998 version of the Sentencing Guidelines used at sentencing as agreed by the parties in the plea agreement, when the total tax loss, including relevant conduct, is more than $120,000 but less than $200,000, the resulting base offense level is 15. The magistrate judge awarded Beck a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Pursuant to the Sentencing Guidelines, based on a total base offense level of 13 and a criminal history category of I, the guideline range for imprisonment is 12 to 18 months. Because the maximum term of imprisonment is one year under 26 U.S.C. § 7203, however, the guideline range is restricted to 12 months. Consequently, the magistrate judge sentenced Beck—both under the Guidelines and as an alternative sentence—to the statutory maximum of 12 months' imprisonment to be followed by one year of supervised release.

## II.

Prior to his sentencing, Beck raised the issue of the constitutionality of the federal sentencing guidelines in a motion specifically citing *Blakely v. Washington*, 542 U.S. 296 (2004), which the magistrate judge construed as an objection to the application of the Sentencing Guidelines. After the briefs were filed in this appeal, but before oral argument, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005). Where, as here, a defendant preserves a potential *Blakely/Booker* error, we review for harmless error. *United States v. Hazlewood*, 398 F.3d 792, 801 (6th Cir. 2005). Such a conclusion is consistent with the Supreme Court's directive in *Booker* that reviewing courts apply "ordinary prudential doctrines," including the "plain error test" and the "harmless-error doctrine." *Booker*, 125 S. Ct. at 769 (internal quotations omitted).

Under Rule 52(a) of the Federal Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Remand is necessary therefore if the magistrate judge committed an error that was not harmless, *i.e.*, if the error affected Beck's substantial rights or prejudicially affected the outcome of the lower court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993). Because Beck admitted to all of the relevant facts that influenced his sentence there has been no Sixth Amendment violation, and this case involves only non-constitutional error—namely, that Beck was sentenced under the mandatory federal sentencing guideline regime invalidated in *Booker*. In *United States v. Barnett*, we held that sentencing a defendant under the mandatory guidelines system that no longer exists post-*Booker* necessarily affects the defendant's substantial rights and constitutes plain error that cannot be harmless. 398 F.3d 516, 530 (6th Cir. 2005). We have held, however, in cases in which the district court not only imposed a Guidelines sentence but, treating the Guidelines as advisory, imposed as well an alternative sentence pursuant to the sentencing factors set out in 18 U.S.C. § 3553(a), that the alternative sentence does not implicate the Sixth Amendment and the sentence need not be remanded on account of *Booker*, but must be reviewed for reasonableness. *See United States v. Chandler*, ___ F.3d ___ (6th Cir. 2005). But here, although the magistrate judge imposed an alternative sentence, he did not cite to 18 U.S.C. § 3553(a), or provide sufficient information with regard to that sentence to permit a reasonableness review.

We must therefore vacate Beck's sentence and remand for re-sentencing in order to afford the magistrate judge the opportunity to re-sentence Beck. Consequently, we decline to consider Beck's claims that the magistrate judge erred in refusing to grant him a downward departure under U.S.S.G. §§ 5H1.4 and 5K2.0, but we are confident that in re-sentencing Beck de novo, the

5

magistrate judge will give whatever consideration to the evidence and legal arguments surrounding these claims that he deems necessary in order to impose a reasonable sentence.

### III.

For the foregoing reasons, we **VACATE** the magistrate judge's sentencing order and **REMAND** the case to the magistrate judge for re-sentencing.