*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

     *v.*

PAUL BUCHANAN,

        *Defendant-Appellant.*

No. 05-5544

> 

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-20296—Samuel H. Mays, Jr., District Judge.

Submitted: April 21, 2006

Decided and Filed: May 26, 2006

Before: BATCHELDER and SUTTON, Circuit Judges; COFFMAN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Mary C. Jermann-Robinson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Jennifer L. Webber, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

The court delivered a PER CURIAM opinion. SUTTON, J. (pp. 5–10), delivered a separate concurring opinion.

_____

## OPINION

_____

PER CURIAM. Paul Buchanan pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). After his sentencing hearing, the district court sentenced him to 77 months of incarceration and 3 years of supervised release. Buchanan appeals. Because the district court did not err in calculating his advisory sentence under the guidelines and because the sentence is a reasonable one, we affirm.

---

[*]The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

## I.

On May 5, 2004, Memphis, Tennessee police officers noticed two people "sitting down on the side of a residence which was a known drug location." JA 47. One of the individuals was Paul Buchanan. When the officers stopped their vehicle in front of the house, Buchanan "took off his shirt, dropped it on the steps where he was sitting" and approached the officers. *Id.* Without any prompting, Buchanan volunteered to the officers "that he was staying there and getting high." *Id.* Upon hearing this, the officers detained Buchanan and searched the area. Under Buchanan's shirt, they discovered a loaded .38 caliber revolver.

On July 20, 2004, a federal grand jury indicted Buchanan for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Buchanan pleaded guilty to this charge on November 24, 2004.

The presentence report set Buchanan's base offense level at 24 because he had committed the felon-in-possession crime "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." JA 48; *see* U.S.S.G. § 2K2.1(a)(2). Buchanan's 23 criminal-history points gave him a criminal-history category of VI. At the sentencing hearing on March 31, 2005, the district court adopted these calculations and, with the government's blessing, adjusted the offense level downward by three levels for Buchanan's acceptance of responsibility. After reducing the offense level to 21, the court determined that the revised guidelines sentencing range was 77 to 96 months.

After it heard testimony from Buchanan and his pastor, the court considered the factors in 18 U.S.C. § 3553(a) to determine an appropriate sentence. Weighing a variety of concerns to "consider[] Mr. Buchanan as an individual," JA 42, the court determined that the guidelines sentence in this case was appropriate "given [Buchanan's] criminal history, given the need to deter crime [and] given the seriousness of the offense," JA 41–42.

## II.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court's remedial opinion rendered the guidelines "effectively advisory," requiring sentencing courts "to consider Guidelines ranges" but "permit[ting] the court[s] to tailor the sentence in light of other statutory concerns as well," *id.* at 245. In determining Buchanan's sentence, the district court properly followed *Booker*'s mandate. The court recognized the advisory nature of the guidelines, *see* JA 38–39 ("I am not obligated to follow [the guidelines], but I am obligated to consider them . . . . before I consider any other sentence."), and stated that its task was to give Buchanan an appropriate sentence in light of the factors identified in § 3553(a). The court explained its understanding of the tension "between uniformity of sentence[s] so that people are treated alike" and the fact "that people are different and every one's situation is unique." JA 39. After properly calculating the guidelines range (77 to 96 months), the court analyzed that range in light of Buchanan's individual circumstances "to determine whether a Guideline sentence in this case" was appropriate. JA 39.

After considering "the nature and circumstances of the offense," § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense [and] to promote respect for the law," § 3553(a)(2), the court noted that Buchanan's "offense is very serious. . . . [T]he defendant was high in possession of a firearm. . . . And it would have been very easy for someone to have been killed or injured in those circumstances, because he wasn't himself. I've heard enough from Mr. Buchanan today to believe that he would not willingly hurt someone. But when you are not yourself, when you are drunk or high, it is very easy for someone to be hurt when you possess a firearm. So the offense is a very serious one. One needs to promote respect for the law and one needs a significant sentence in the face of a serious offense to do that." JA 39–40.

Reflecting upon the need "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), the court noted that "there are people all over this community who are doing exactly what Mr. Buchanan was doing. That is to say, they are felons in possession of firearms. They are using drugs illegally and it seems to be very hard to deter them." JA 40.

To account for the need "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), the court analyzed the "likelihood of recidivism" in the context of Buchanan's "extensive criminal history," JA 40. Looking "behind the criminal history—in other words, not to be driven by the points," the court found "a history of violence and drug use." JA 41. The court explained that this history did "not predict well for protecting the public from further crimes of this defendant," *id*.; although the court believed "the defendant does not want to commit further crimes," it considered the issue of "whether he can overcome his addiction and his history" to be "an open question," *id.*

To consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," § 3553(a)(2)(D), the court noted that it believed Buchanan "could benefit from intensive drug treatment . . . . in a prison setting" but that "it is a wash as far as whether it is three years, or six years, or ten" because "[h]e will benefit as much in three years as he will in ten years from that perspective," JA 41.

"[C]onsidering and weighing all those factors," the judge determined that, with the exception of § 3553(a)(2)(D), they "weigh in favor of a Guideline sentence." JA 41. He noted that if he had not heard from Buchanan and his pastor, he "would have sentenced Mr. Buchanan to the maximum [he] could have sentenced him under the law because of his criminal history and the nature of the offense." JA 42. But "having heard from them and trying to resolve [the] tension between uniformity and considering the individual," the judge said he "believe[d] [Buchanan] wants to turn his life around" and he believed that Buchanan could do so. JA 42.

In our view, the court demonstrated a model approach to sentencing in the aftermath of *Booker*. The judge properly calculated the guidelines range, then carefully considered the appropriateness of that range as applied to the defendant before him in light of the concerns encompassed by the statutory factors. Balancing competing interests, goals and individual characteristics, the court found the recommended guidelines range to be appropriate and chose to sentence Buchanan at the bottom of that range to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in the § 3553(a)(2) factors. 18 U.S.C. § 3553(a).

In challenging that conclusion, Buchanan principally argues that the district court "improperly interpreted the holding of *Booker* to state that a sentence within the Guideline range was presumptively reasonable" and "treated the Guidelines as presumptively reasonable." Buchanan Br. at 14. To the extent Buchanan means to say that trial judges may not give an irrebuttable presumption of reasonableness to a guidelines sentence, he is right. Such an approach cannot be squared with *Booker*. *See, e.g.*, *United States v. Webb*, 403 F.3d 373, 385 n.9 (6th Cir. 2005) ("[W]e [ ] decline to hold that a sentence within a proper Guidelines range is per-se reasonable. Such a per-se test is . . . inconsistent with the Supreme Court's decision in *Booker*, as such a standard would effectively re-institute mandatory adherence to the Guidelines.") (internal quotation marks and citation omitted); *United States v. Crosby*, 397 F.3d 103, 115 (2d Cir. 2005) (same). But that, quite clearly, is not what the district court did. *See* JA 38–39 (noting that the guidelines were not binding on the court and noting that after calculating the advisory guidelines range the court's task is "to determine whether a Guideline sentence in this case" is appropriate in light of Buchanan's individual circumstances). To the extent Buchanan means to argue that courts of appeals may not give a properly calculated guidelines sentence a "rebuttable presumption of reasonableness," he is

wrong, as a recent decision of the court confirms. *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Buchanan also complains that the court imposed an unreasonable sentence that was "greater than necessary to punish" his actions. Buchanan Br. at 7. He claims that the court's "characterization of the facts is contrary to the factual record of the nature of the defendant's offense" because it described the offense as a "very serious one." *Id.* at 14. This argument also lacks merit. Buchanan argues that "no violence occurred or was implied" during his interaction with the officers at the time of his arrest and that he "did not use the gun to rob or assault people." *Id.* at 15; *see also id*. at 7 (Buchanan "was found to be in possession of the firearm while he was doing nothing more than sitting on the porch of a house with his girlfriend, ingesting drugs."). But the district court recognized as much and adequately supported its conclusion that possessing a loaded gun while "high" was indeed "very serious" because of the *potential* danger such behavior poses to society, *see* JA 39 ("[W]hen you are not yourself, when you are drunk or high, it is very easy for someone to be hurt when you possess a firearm."), not because Buchanan in fact threatened anyone.

III.

For these reasons, we affirm.

—————————————

**CONCURRENCE**

—————————————

SUTTON, Circuit Judge, concurring.  While I fully concur in the court's decision to affirm the district court's application of our post-*Booker* sentencing requirements, I write separately to discuss the "presumption of reasonableness" that we applied in this case.

By my count, six circuits have held that a district court's decision to sentence a defendant within the range of the advisory guidelines receives a "presumption of reasonableness" upon appeal. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *United States v. Johnson*, 445 F.3d 339, 341 (4th Cir. 2006); *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *United States v. Lincoln,* 413 F.3d 716, 717–18 (8th Cir. 2005).  One circuit, without addressing the propriety of a "presumption of reasonableness" in so many words, says that sentences within the advisory guidelines "ordinarily" will be reasonable.  *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).  And four circuits, all of them after our decision in *Williams*, have declined to adopt a presumption of reasonableness.  *See United States v. Jiménez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 331–32 (3d Cir. 2006); *United States v. Zavala*, 443 F.3d 1165, 1168–70 (9th Cir. 2006) (rejecting a district-court presumption of reasonableness).

While the four circuits that have declined to adopt the presumption offer reasonable bases for doing so, the presumption in my view continues to make sense.  *First*, the guidelines remain the one § 3553(a) factor that accounts for all § 3553(a) factors.  While one can insist that "a Guideline calculation is simply *one factor* to be considered when selecting the most appropriate sentence for a particular defendant," *United States v. Zavala*, 443 F.3d 1165, 1171 (9th Cir. 2006), one cannot deny that the guidelines account for these other factors.  In establishing the Sentencing Commission, Congress directed the agency to consider many of the same factors (if not effectively all of the same factors) in developing sentencing guidelines that § 3553(a) directs sentencing courts to consider in determining an appropriate sentence for each defendant:

> *  *See* 28 U.S.C. § 991(b)(1)(A) (requiring the Commission to establish sentencing policies and practices that "meet[] [ ] the purposes of sentencing as set forth in section 3553(a)(2) of title 18");

> *   *Compare* 28 U.S.C. § 991(b)(1)(B) (requiring the Commission to establish sentencing policies and practices that "provide certainty and fairness in meeting the purposes of sentencing [and] avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct") *with* 18 U.S.C. § 3553(a)(6) (requiring sentencing judges "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct");

> *   *Compare* 28 U.S.C. § 991(b)(1)(B) (requiring the Commission to establish sentencing policies and practices that "maintain[] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices") *with* 18 U.S.C. § 3553(a) (requiring sentencing judges to "impose a sentence sufficient, but not greater than necessary, to comply with" § 3553(a)(2) and to "consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant").

*Second*, the guidelines not only attempt to account for the same factors that § 3553(a) asks district courts to consider in sentencing, but they also represent nearly two decades of considered judgment about the range of sentences appropriate for certain offenses. Based on the aggregate sentencing experiences of individual judges, the administrative expertise of the Commission and the input of Congress, the presumption thus recognizes that "the Guidelines represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses. The Guidelines, rather than being at odds with the § 3553(a) factors, are instead the expert attempt of an experienced body to weigh those factors in a variety of situations. The continuing importance of the Guidelines in fashioning reasonable sentences, and the presumption of reasonableness of a Guidelines sentence, simply reflect that the Guidelines are generally an accurate application of the factors listed in § 3553(a)." *United States v. Terrell*, 445 F.3d 1261, 1265 (10th Cir. 2006) (internal quotation marks and citations omitted); *see United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005); *United States v. Wilson*, 350 F. Supp. 2d 910, 915 (D. Utah 2005) ("It would be startling to discover that while Congress had created an expert agency, approved the agency's members, directed the agency to promulgate Guidelines, allowed those Guidelines to go into effect, and adjusted those Guidelines over a period of [ ] years, that the resulting Guidelines did not well serve the underlying congressional purposes [of sentencing].").

*Third*, the presumption respects the alignment of the views of the Sentencing Commission with the independent views of a sentencing judge. After *Booker*, sentencing judges of course must treat the guidelines as advisory, not mandatory, and thus must treat the guidelines as generalized recommendations about the range of sentences appropriate for certain crimes committed by individuals with certain backgrounds. And after *Booker*, judges independently must determine whether those generalizations make sense when applied to the individual defendants before them based on their own assessment of the remaining § 3553(a) factors. A sentence premised on both of these things—an accurate calculation of the guidelines range and an independent and reasoned judicial determination that a sentence within that range accords with the § 3553(a) factors—does not come to the court of appeals as a run-of-the-mine sentence. The presumption accounts for the sentencing reality that Congress in conjunction with the Sentencing Commission has come to the conclusion that a particular sentencing range is appropriate for this kind of crime and this kind of defendant and that a federal judge, who not only has considerable sentencing experience but also had a ring-side view of the sentencing hearing, has independently come to the same conclusion.

*Fourth*, the presumption reflects the reality of what the courts of appeals are doing. The appellate courts have reversed few unvaried guidelines sentences. And when they have done so, that generally was because the sentencing court made a procedural error in delivering the sentence, not because the appellate court substantively concluded that a sentence within the advisory guidelines was unreasonable. *See, e.g.*, *United States v. Pizarro-Berrios*, ___ F.3d ___, No. 04-2062, 2006 WL 1195664, at *10 (1st Cir. 2006) (reversing due to a procedural error); *United States v. Cruzado-Laureano*, 440 F.3d 44, 49–50 (1st Cir. 2006) (reversing due to an erroneous guidelines calculation); *United States v. Diaz-Argueta*, ___ F.3d ___, No. 05-10224, 2006 WL 1320033, at *4 (9th Cir. 2006) (reversing due to failure to consider the § 3553(a) factors); *United States v. Cunningham*, 429 F.3d 673, 679 (reversing due to failure to explain the reasons for the sentence). To date, I am aware of just one unvaried guidelines sentence that a court of appeals has reversed as substantively unreasonable—and it comes from a circuit that has embraced the presumption. *See United States v. Lazenby*, 439 F.3d 928, 933–34 (8th Cir. 2006) (reversing a sentence due to the disparity between similarly situated conspirators).

No less importantly, in reviewing sentencing variances, every appellate court to consider the issue (to my knowledge) has held that "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer to enable the court of appeals to assess the reasonableness of the sentence imposed." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). Why would a court of appeals ask more

of a sentencing judge the further he varies a sentence from the guidelines range—unless the guidelines range represents an initial benchmark of appellate reasonableness? *See United States v. Lazenby*, 439 F.3d 928, 932 (8th Cir. 2006) ("Sentences varying from the guidelines range . . . are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a). How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed.") (internal quotation marks omitted); *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006) ("The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be.").

Even some of the courts of appeals that have rejected the presumption seem to demand more when a sentencing judge issues a variance from the advisory guidelines range than when she does not. *See United States v. Smith*, 445 F.3d 1, 3 (1st Cir. 2006) ("The sentence is not a modest variance from the guideline range, but less than half the minimum of the range. '[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed.'") (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)); *cf. United States v. Mix*, 442 F.3d 1191, 1196–97 (9th Cir. 2006) ("Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (*if the sentence lies outside it*) this defendant deserves more or less.") (internal quotation marks omitted and emphasis added).

Where else, at any rate, would a court of appeals start in measuring the reasonableness of a sentence? Starting with the statutory minimum (if any) for the offense, then adjusting the sentence upward (if appropriate) based on the appellate court's own assessment of the § 3553(a) factors, and then (and only then) considering the guidelines range might work in theory but would seem doomed to founder on the "rough equality" requirement, if not the impracticality of such an approach. *See United States v. Jiménez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) ("To construct a reasonable sentence starting from scratch in every case would defeat any chance at rough equality which remains a congressional objective."). So long as Congress requires judges to consult the guidelines and so long as the guidelines attempt to account for the other § 3553(a) factors, it is hard to imagine appellate judges not beginning their reasonableness review with the empirical baseline of a guidelines calculation. Were it otherwise, we would not treat the recommended guidelines range as the one § 3553(a) factor that specifically must be accounted for in delivering a sentence and the one § 3553(a) factor that most assuredly will prompt a reversal if it is materially flawed. *See United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005).

In the face of these considerations, complaints about the presumption seem overstated in some instances and misplaced in others. There are many things, for example, that the presumption does not do. It is a rebuttable presumption of reasonableness, not a per se presumption. *United States v. Richardson*, 437 F.3d 550, 554 n.2 (6th Cir. 2006). Appellate courts of course remain responsible for reviewing all sentences for reasonableness. *See Booker*, 543 U.S. at 260. Nor is the opposite true, which is to say there is no presumption of unreasonableness for guidelines variances. *See United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006); *cf.* Statement of the Honorable Ricardo H. Hinojosa before the Subcommittee on Crime, Terrorism, and Homeland Security, at *16 (Mar. 16, 2006).

Perhaps most critically, the presumption does not excuse a sentencing court's failure to adhere to the procedural requirements of a reasonable sentence and indeed applies only to sentences that generally have satisfied these numerous requirements. In the Sixth Circuit, as in many other circuits, we distinguish between the "substantive and procedural components" of "reasonableness review," and nothing about the presumption permits a sentencing court to ignore the procedural requirements of a reasonable sentence. *See United States v. McBride*, 434 F.3d 470, 476 n.3 (6th

Cir. 2006); *United States v. Webb*, 403 F.3d 373, 383–85 (6th Cir. 2005); *see also, e.g.*, *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).

Consider the following procedural requirements that a district court must honor before an unvaried sentence receives a presumption of reasonableness on appeal:

(1) the judge must make all findings of fact necessary to apply the guidelines to the defendant, *United States v. Orlando*, 281 F.3d 586, 600–01 (6th Cir. 2002); *see United States v. Moreland*, 437 F.3d 324, 432 (3d Cir. 2006);

(2) the judge must calculate the guidelines sentencing range correctly, *see* 18 U.S.C. § 3742(f)(1); *United States v. Gibson*, 409 F.3d 325, 338–39 (6th Cir. 2005);

(3) the judge must determine whether to grant a downward departure or an upward departure from the guidelines, *see, e.g.*, *United States v. McBride*, 434 F.3d 470, 474–75 (6th Cir. 2006); *United States v. Puckett*, 422 F.3d 340 (6th Cir. 2005);

(4) the judge must recognize her discretion to issue a sentence that varies from the guidelines, *see Booker*, 543 U.S. at 245–46;

(5) the judge must consider the § 3553(a) factors in exercising her independent judgment about what an appropriate sentence should be, *id.*;

(6) the judge must account for any relevant statutory minimum and maximum sentences, *see, e.g.*, *United States v. Van Hoosier*, 442 F.3d 939, 946 (6th Cir. 2006); and

(7) the judge must give a reasoned explanation for the sentence, *see, e.g.*, *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005); *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005).

Nor has our court hesitated to reverse sentences on the ground that they were "procedurally" unreasonable for one or more of these reasons. *See, e.g.*, *United States v. Van Hoosier*, 442 F.3d 939, 946 (6th Cir. 2006) (failing to take into account the statutory mandatory minimum); *United States v. Jackson*, 408 F.3d 301, 304–05 (6th Cir. 2005) (failing to explain the reasons for the sentence); *United States v. Canaca*, No. 04-2211, 2006 WL 773746, at *2 (6th Cir. Mar. 27, 2006) (same); *United States v. Ouwenga*, No. 04-2330, 2006 WL 700929, at *6 (6th Cir. Mar. 17, 2006) (failing to account for the § 3553(a) factors); *United States v. Miller*, No. 04-4183, 2005 WL 3271316, at *3 (6th Cir. Dec. 1, 2005) (failing to explain the reasons for the sentence); *United States v. Hopkins*, No. 03-2311, 2005 WL 2673524, at *9 (6th Cir. Oct. 19, 2005) (failing to account for the advisory nature of the guidelines); *United States v. Beck*, No. 04-6494, 2005 WL 2108332, at *3 (6th Cir. Sept. 1, 2005) (failing to account for the § 3553(a) factors).

Given the far more consequential impact of our procedural-reasonableness requirements, one might fairly ask why the presumption matters. All sentences that satisfy the procedural requirements of post-*Booker* review receive deferential review, whether they fall within the advisory guidelines range or not. So what difference does it make that a sentence already receiving deferential review receives a presumption of reasonableness as well? Probably not a lot in most cases, it is true. But the presumption still helps appellate courts distinguish among three types of sentences that have received different types of review since *Booker* and would seem to deserve it: (1) challenges to the length of a sentence within the advisory guidelines range; (2) challenges to the failure to grant a variance; and (3) challenges to variances. As to the first two categories, I am aware of few sentences that have been vacated based only on a substantive (as opposed to a procedural) disagreement

between the sentencing court and the court of appeals about the sentence. *See United States v. Lazenby*, 439 F.3d 928, 933–34 (8th Cir. 2006). As to the last category, while the trial court's substantive decisions still receive, and should receive, deferential review, *see United States v. Reinhart*, 442 F.3d 857, 862 (5th Cir. 2006); *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2006); *United States v. Rivera*, 439 F.3d 446, 447 (8th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006); *United States v. Fernandez*, 443 F.3d 19, 27, 34–35 (2d Cir. 2006), most courts have given these sentences a harder look. And that seems appropriate given § 3553(a)'s concerns about uniformity, the guidelines' efforts to account for the § 3553(a) factors and the decision of the sentencing judge not to follow the recommendations of the Sentencing Commission.

If I have one anxiety about the presumption, it is the risk that it will cast a discouraging shadow on trial judges who otherwise would grant variances in exercising their independent judgment. But there is good reason to doubt that rejecting the presumption would mitigate this concern. Even the appellate courts that have declined to adopt the presumption have acknowledged the unsurprising truth that unvaried sentences customarily will be reasonable. *See United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006) ("We recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."); *United States v. Jiménez-Beltre*, 440 F.3d 514 (1st Cir. 2006) (en banc) (noting that unvaried sentences will receive "substantial weight" on appellate review); *United States v. Cooper*, 437 F.3d 324, 331–32 (3d Cir. 2006) (noting that "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range"); *United States v. Zavala*, 443 F.3d 1165, 1170 (9th Cir. 2006) (noting that "it is very likely that the Guideline calculation will yield a site within the borders of reasonable sentencing territory").

Properly understood, moreover, reasonableness (and, it follows, a presumption of reasonableness) is primarily an appellate, not a trial court, device. "[A] district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006); *see United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006). With or without the presumption, the district court's job remains the same—fulfilling the core mission of the *Booker* remedial opinion by ensuring that it is exercising independent judgment in sentencing criminal defendants within statutory limits. *See Booker*, 543 U.S. at 233 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."). And in exercising that "broad discretion" under *Booker*, importantly, the guidelines' restrictions on granting departures do not circumscribe a trial court's decision to grant a variance. *See United States v. Smith*, 445 F.3d 1, 3 (1st Cir. 2006) ("That a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines. The guidelines—being advisory—are no longer decisive as to factors any more than as to results.").

That the presumption is an appellate, not a trial court, device, does not mean that every sentence a trial court deems "reasonable" or to which it accords a presumption of reasonableness contains the seeds of reversible error. One can exercise independent judgment while still respecting the Sentencing Commission's judgment about the appropriate sentence for certain types of crime. If the trial court appreciates that the guidelines are advisory, fairly considers the § 3553(a) factors in announcing its sentence and adheres to the other procedural requirements of a reasonable sentence, that should suffice. At some point, there must be a limit to the numbers of ways (and times) the courts of appeals apply reasonableness review that calls for trial judges to conduct new sentencing hearings.

*Booker* after all empowered district courts, not appellate courts. And sentencing courts, not the Sentencing Commission, retain the ultimate authority within reason to apply the § 3553(a) factors to each criminal defendant. A trial judge can talk about the § 3553(a) factors until he is blue in the face without giving independent judgment to the sentence at hand. And he can reference them briefly and still exercise that judgment. The end is not process in itself but the substantive goal that trial judges exercise independent and deliberative judgment about each sentence—making these sentences more than an algebraic equation and less than a Rorschach test. While it made considerable sense in the immediate aftermath of *Booker* for our court to ensure that trial judges were aware of the discretion *Booker* gave them in this area and to establish some procedural requirements to guide them in exercising that discretion, we ought to return at some point to what perhaps is the most important presumption in this area—giving district courts the benefit of the doubt in reviewing their sentencing determinations. *See, e.g.*, *United States v. Fernandez*, 443 F.3d 19, 29 (2d Cir. 2006) ("[W]e presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the [18 U.S.C. § 3553(a)] factors."); *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005) (explaining that "we begin our review with the presumption that the district judge knew and applied the law correctly").