KAVANAUGH, Circuit Judge,
concurring.
I join the Court’s opinion and add this concurrence to note a few broader points about the path of post -Booker jurisprudence in the federal courts.
To review: In Booker, a five-justice majority of the Supreme Court held that the United States Sentencing Guidelines were unconstitutional under the Fifth and Sixth Amendments to the extent that facts used to increase a criminal sentence (beyond what the defendant otherwise could have received) were not proved to a jury beyond a reasonable doubt. United States v. Booker, 543 U.S. 220, 226-27, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (Stevens, J., joined by Scalia, Souter, Thomas, and Ginsburg, JJ.). The logical upshot of this part of Booker (what is known as the Booker constitutional opinion) is that the Constitution is satisfied by a sentence in which sentencing facts are proved to a jury beyond a reasonable doubt.
In some tension with the Booker constitutional opinion, however, a different five-Justice majority of the Booker Court also held (in what is known as the Booker remedial opinion) that the constitutional problem with the Guidelines is more readily solved not by requiring sentencing facts to be proved to a jury beyond a reasonable doubt, but instead by making the Guidelines one factor in the district court’s sentencing decision, along with other factors specified in 18 U.S.C. § 3553(a). Id. at 245-46, 260-61, 125 S.Ct. 738 (Breyer, J., *919 joined by Rehnquist, C.J., and O’Connor, Kennedy, and Ginsburg, JJ.); cf. id. at 302, 125 S.Ct. 738 (Stevens, J., dissenting in part, joined by Scalia and Souter, JJ.) (“[B]y repealing the right to a determinate sentence that Congress established in the SRA, the Court has effectively eliminated the very constitutional right Apprendi sought to vindicate”). The Booker remedial opinion emphasized, however, that the sentencing court still “must consult” the Guidelines and “take them into account when sentencing.” Id. at 264, 125 S.Ct. 738. The Booker remedial opinion also directed appellate courts to review district court sentences for “reasonableness” — a term not defined, but which the Court stated would help “to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.” Id. at 264, 125 S.Ct. 738.
In light of the Booker remedial opinion and § 3553(a)’s requirement that district courts “shall consider” the Guidelines, as well as § 3553(a)’s express goal of avoiding unwarranted sentencing disparities, this Court and other federal courts after Booker have held that the Guidelines remain central to sentencing. In part because the “reasonableness” of a sentence is not self-defining and because the Booker remedial opinion said that appellate review would help maintain uniformity, appellate courts have relied on the Guidelines as the predominant substantive standard against which to measure a sentence’s reasonableness. Indeed, many courts of appeals, including this one, have accorded a “presumption of reasonableness” to within-Guidelines sentences. See United States v. Dorcely, 454 F.3d 366, 376 (D.C.Cir.2006); see generally United States v. Buchanan, 449 F.3d 731, 735-41 (6th Cir.2006) (Sutton, J., concurring). And appeals courts have found many below-Guidelines sentences to be “unreasonable.” The post -Booker appellate jurisprudence in turn has exerted further hydraulic pressure on district courts to rely heavily on the Guidelines in sentencing criminal defendants. It thus may be something of a misnomer to call the Guidelines “advisory” with respect to current sentencing practices given that appeals courts often assess the propriety of a district court sentence in part by reference to the Guidelines.
As we review what has happened since Booker, there is no denying that the post-Booker system in substance closely resembles the pre-Booker Guidelines system in constitutionally relevant respects. See Michael W. McConnell, The Booker Mess, 83 denv. u.l. Rev. 665, 678 (2006) (“All the things that troubled Sixth Amendment purists about the pr e-Booker Guidelines system are unchanged.”); see also Douglas A. Berman & Stephanos Bibas, Making Sentencing Sensible, 4 Ohio State J. Crim. L. 37, 53 (2006); Douglas A. Berman, Tweaking Booker: Advisory Guidelines in the Federal System, 43 Hous. L. Rev. 341, 347-55 (2006). Four of the five Justices who joined the Booker remedial opinion, including its author Justice Breyer, did not find any constitutional problem with the Guidelines to begin with. So it is understandable that the current system as applied is not a major departure from the pr e-Booker Guidelines system. Cf. Booker, 543 U.S. at 312-13, 125 S.Ct. 738 (Scalia, J., dissenting in part) (stating that Booker remedial opinion may convey message that “little has changed” from mandatory Guidelines system and posing question: “Will appellate review for ‘unreasonableness’ preserve de facto mandatory Guidelines by discouraging district courts from sentencing outside Guidelines ranges?”).
To be sure, district and appeals courts now take some additional and important procedural steps (as exemplified again by today’s per curiam opinion). But the bot *920 tom line, at least as a descriptive matter, is that the Guidelines determine the final sentence in most cases. And notwithstanding the Booker constitutional opinion, many key facts used to calculate the sentence are still being determined by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. The oddity of all this is perhaps best highlighted by the fact that courts are still using acquitted conduct to increase sentences beyond what the defendant otherwise could have received — notwithstanding that five Justices in the Booker constitutional opinion stated that the Constitution requires that facts used to increase a sentence beyond what the defendant otherwise could have received be proved to a jury beyond a reasonable doubt.
In short, we appear to be back almost where we were pre-Booker. And if that is so — and if the lower courts’ effort to harmonize the competing goals of the Booker opinions has become the jurisprudential equivalent of a dog chasing its tail — it makes sense to examine how current sentencing practices square not just with Booker but with underlying constitutional principles.
The disagreement in Booker (and in earlier cases such as Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)) represents the collision of two starkly different conceptions of how the Fifth and Sixth Amendments apply to criminal sentencing.
The first conception of the Fifth and Sixth Amendments, which might be called the “deferenee-to-legislatures” model, generally defers to legislatures in defining crimes and enacting sentencing schemes. Under this interpretation, the Fifth and Sixth Amendments generally require that a jury find the elements of the crime (as defined by the legislature) beyond a reasonable doubt. As to sentencing, this approach gives legislatures wide discretion in crafting a mandatory or structured sentencing system; or adopting an unstructured system in which each sentencing judge possesses broad authority to assess a sentence based on the individual background, facts, and circumstances of the offense and offender; or choosing some approach in between. See generally Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (Rehnquist, J.) (opinion of the Court); Booker, 543 U.S. at 326-34, 125 S.Ct. 738 (Breyer, J., dissenting in part); Blakely, 542 U.S. at 314-26, 124 S.Ct. 2531 (O’Connor, J., dissenting); id. at 326-28, 124 S.Ct. 2531 (Kennedy, J., dissenting). Proponents of this approach argue that it has prevailed throughout most of our history, as courts have generally respected and adhered to legislative choices with respect to sentencing schemes. See Booker, 543 U.S. at 327-28, 125 S.Ct. 738 (Breyer, J., dissenting in part).
The second conception of the Fifth and Sixth Amendments, which might be termed the “real-elements-of-the-offense” model, rests on the constitutionally central role of the jury in the criminal process. This approach begins with the idea that no logical distinction exists between the elements of a crime and so-called sentencing facts that are used to increase a sentence. Because the Constitution requires that the Government prove the elements of a crime to a jury beyond a reasonable doubt, the Constitution also requires that the Government prove substantively similar sentencing facts (such as carrying a weapon during commission of a drug crime) to a jury beyond a reasonable doubt. To do otherwise, this view contends, would be to elevate form over substance and allow leg *921 islatures to evade the constitutional requirement that the prosecutor prove the elements of the crime to a jury beyond a reasonable doubt simply by re-labeling elements of the crime as sentencing factors. Under this jurisprudential approach, therefore, courts do not defer to a legislative choice to label a fact as a sentencing factor rather than an element of the crime. See Booker, 543 U.S. at 226-44, 125 S.Ct. 738 (Stevens, J., joined by Scalia, Souter, Thomas, and Ginsburg, JJ.); Harris v. United States, 536 U.S. 545, 572-83, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J., dissenting); Apprendi, 530 U.S. at 498-99, 120 S.Ct. 2348 (Scalia, J., concurring).
There is an important qualification to this second approach, however, which may explain some of the conceptual and practical difficulty in this area. Despite requiring the jury to find beyond a reasonable doubt the facts used to increase a sentence, the adherents to the real-elements-of-the-offense approach allow purely discretionary sentencing schemes whereby judges “exercise broad discretion in imposing a sentence within a statutory range.” Booker, 543 U.S. at 233, 125 S.Ct. 738; see also Apprendi, 530 U.S. at 481, 120 S.Ct. 2348. This concession creates an apparent anomaly: After all, discretionary sentencing systems appear to pose an even greater concern that key facts used to increase a sentence are found by judges — on the record or often silently — by a preponderance of the evidence rather than by juries beyond a reasonable doubt. See Apprendi, 530 U.S. at 548—49, 120 S.Ct. 2348 (O’Connor, J., dissenting) (“[O]ur approval of discretionary-sentencing schemes, in which a defendant is not entitled to have a jury make factual findings relevant to sentencing despite the effect those findings have on the severity of the defendant’s sentence, demonstrates that the defendant should have no right to demand that a jury make the equivalent factual determinations under a determinate-sentencing scheme.”); Kevin R. Reitz, The New Sentencing Conundrum, 105 Colum. L. Rev. 1082, 1119 (2005). Because the Court has long upheld discretionary sentencing schemes, Chief Justice Rehnquist stated for the Court in 1986 (before the Apprendi-Blakely-Booker cases): “We have some difficulty fathoming why the due process calculus would change simply because the legislature has seen fit to provide sentencing courts with additional guidance.” McMillan, 477 U.S. at 92, 106 S.Ct. 2411.
Notwithstanding weighty arguments of the kind made by Chief Justice Rehnquist, the adherents to the real-elements-of-the-offense conception have maintained their approach — and continued to accept discretionary sentencing schemes as a constitutionally acceptable alternative. See Booker, 543 U.S. at 233, 125 S.Ct. 738. As a result, the real-elements-of-the-offense approach to the Constitution seems to mean the following: Legislatures may enact: (i) a discretionary sentencing scheme where the sentencing judge has complete discretion to impose a sentence within the legal range that applies to the crime found by the jury, and the judge may determine the sentence based on the judge’s own subsidiary factual determinations, other considerations, or no stated rationale at all; or (ii) a mandatory sentencing scheme where the sentencing judge has no discretion to make factual determinations to increase a sentence. But legislatures, under this real-elements-of-the-offense approach, may not enact an intermediate sentencing scheme where the sentencing judge has structured discretion — in other words, where the sentencing judge must make factual determinations (such as “Did the defendant carry a gun during the drug transaction?”) in order to increase a sentence.
*922 How do post-Booker sentencing practices square with the various constitutional approaches described above?
If the deference-to-legislatures conception is correct, then current federal sentencing practices, which largely mirror pr e-Boolcer practices, are obviously constitutionally permissible. Indeed, if this conception is correct, then the Booker constitutional opinion is incorrect and the Sentencing Guidelines should apply as promulgated and made mandatory by Congress.
If the real-elements-of-the-offense approach is correct, however, then current federal sentencing practices may be in tension with the Constitution. That is because the current system — in practice— works a lot like the pr e-Booker system: District judges are obliged to apply the Guidelines, and certain facts used to increase a sentence (beyond what the defendant would have received based on the offense of conviction) are found by the judge, not by the jury beyond a reasonable doubt.