*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0319p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――――

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

      *v.*

                                 No. 10-1716

LEONARD OVERMYER, III,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 09-00260-001—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: December 20, 2011

Before: MERRITT, CLAY and SUTTON, Circuit Judges.

―――――――――――――

**COUNSEL**

**ON BRIEF:** Frank E. Stanley, Grand Rapids, Michigan, for Appellant. Nils R. Kessler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

      SUTTON, J., delivered the opinion of the court, in which CLAY, J., joined. MERRITT, J. (pp. 7–9), delivered a separate dissenting opinion.

―――――――――――――

**OPINION**

―――――――――――――

      SUTTON, Circuit Judge. Leonard Overmyer pled guilty to transporting child pornography and received an 87-month prison sentence. The district court addressed all of Overmyer's arguments for a lower sentence and reasonably imposed a bottom-of-the-guidelines sentence. We affirm.

I.

In 2008, an Internet service provider reported several transfers of suspected child pornography.  Investigators traced the files to an automobile-parts manufacturer in Kentwood, Michigan.  An internal investigation revealed that Overmyer, an employee of the company, had used the computer network to access hundreds of pornographic web sites, including many with names like "preteenonline."  The company fired Overmyer, but prosecutors never filed charges, apparently due to the way the company handled the investigation.

Less than one year later, authorities received a similar tip.  This time they traced the activity to Overmyer's home, where they executed a search warrant.  The officers found two computers, but they did not contain any pornography and Overmyer disclaimed owning any other computers.  Overmyer asked to take his SUV to the repair shop while the search continued.  The request prompted the officers to examine the vehicle, which contained a hidden laptop, one with thousands of pornographic images, including at least 90 that involved children.  Some of the images involved sexualized depictions of children in pain and bondage.  Records on the laptop showed that Overmyer had visited child pornography web sites repeatedly during the past year.

Overmyer pled guilty to one count of transporting child pornography, an offense that comes with a statutory minimum of 60 months and a statutory maximum of 240 months.  *See* 18 U.S.C. §§ 2252A(a)(1), (b)(1).  The guidelines range was 87–108 months.

Overmyer moved for a downward variance, requesting a sentence near the statutory minimum on three grounds:  he sought therapy on his own initiative; he expressed remorse for his actions; and he suffered from depression over the impact of the crime on his family.  The court imposed an 87-month sentence, explaining that it agreed with the severity of the child-pornography sentencing guidelines—"that the guidelines themselves measure the appropriate harms"—and that it would not exercise its authority to vary downward based on a policy disagreement with them.  R.39 at 14.

II.

District courts have broad discretion to impose sentences within the statutory range, *see United States v. Booker*, 543 U.S. 220, 233 (2005), requiring us to limit appellate review of such sentences to whether they are procedurally and substantively reasonable, *Gall v. United States*, 552 U.S. 38, 51 (2007). This one is both.

Overmyer first raises a procedural-reasonableness objection—that the process underlying his sentence was amiss. Because Overmyer did not raise this objection when given the opportunity to do so at the sentencing hearing, we review it for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). In this instance, there was no error, plain or otherwise. The parties do not dispute the applicable guidelines range, and the district court adequately addressed each of Overmyer's arguments for a variance. The judge "recognize[d] that . . . [Overmyer's] nuclear family has been shattered. . . . [and took] into account the fact that [Overmyer] now . . . understands the victimization of young children who are depicted in these images." R.39 at 13. He also "fully underst[oo]d" that "Mr. Overmyer has lost his livelihood and his nuclear family," but said that in his "judgment that merits a sentence at the lowest end of the advisory guideline range," R.39 at 16, not a sentence below the range. The court addressed each of Overmyer's arguments for a below-guidelines sentence, leaving nothing procedurally awry about the sentence.

Overmyer next raises a substantive-reasonableness objection—that his sentence is too long. A within-guidelines sentences is presumptively reasonable, *Vonner*, 516 F.3d at 389, and Overmyer points to nothing to displace the presumption. He claims that a shorter sentence is in order because he sought counseling on his own after the arrest and because he was unusually despondent over the collateral effects of his conduct. Although these considerations might support a lower sentence, they do not compel one, and that is all we have license to consider. The same is true about the collateral consequences—familial and professional—of Overmyer's actions. They provide a basis for lowering a sentence to the bottom of the guidelines (as the court did), and in some settings they would provide a basis for granting a downward variance (as the court did

not do), but none of them required the court to vary the sentence below the guidelines range.

Our colleague does not dispute any of this. He instead submits that, "as an appellate judge," he is "permitted to disagree respectfully with the sentencing judge about the fairness of the guidelines policy and its application to this case." *Infra* at 8. In this instance, because the guidelines call for a sentence that is "unconscionably harsh," *id.* at 9, he would authorize a sentence no longer than the statutory minimum, making a 60-month sentence the floor *and* ceiling of a "reasonable" sentence. *Id.* at 8 ("I would limit the sentence in such cases to the mandatory minimum of 5 years.").

We respectfully disagree. Overmyer has not sought what our colleague proposes—a five-year sentence. He claims that his 87-month sentence is too long and that we should remand his case for re-sentencing, not that we should require the district court to impose a five-year sentence in this case and in similar child-pornography cases.

This proposal also overlooks a key change in federal sentencing law. In the aftermath of *United States v. Booker*, 543 U.S. 220 (2005), *Rita v. United States*, 551 U.S. 338 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), it is trial judges, not appellate judges, who have considerable discretion in applying the § 3553(a) factors to an individual. Whether in a given case a district court agrees with the guidelines recommendation, varies downward from the guidelines range or varies upward from the range, we defer to their sentencing decisions unless those decisions are unreasonable. It follows that, while our colleague is correct that appellate judges may disagree with the sentencing judge about the appropriateness of a given sentence in a given case, mere disagreement is not by itself sufficient to warrant reversal. Something more—a disagreement that establishes the unreasonableness of the sentence—must be present.

In cases where the district court and the sentencing commission independently agree about an appropriate sentencing range, as happened here, it will be difficult to establish that the sentence is ureasonable. As *Kimbrough* explained, sentencing courts and the sentencing commission possess "discrete institutional strengths." 552 U.S. at 109. When they disagree, we examine their respective strengths (and whether those

strengths were truly at work) to decide whether the district court reached a reasonable outcome. *See id.* at 109–10. But when they agree, our role is more limited. If both the retailer and the wholesaler arrive at the same number, *Rita*, 551 U.S. at 348, there is a better chance that the price is right. *See United States v. Buchanan*, 449 F.3d 731, 736–37 (6th Cir. 2006) (Sutton, J., concurring). For this reason, our circuit has adopted a rebuttable, but only a rebuttable, presumption that within-guidelines sentences are reasonable. *Vonner*, 516 F.3d at 389.

Neither Overmyer nor our colleague has rebutted that presumption. Overmyer received and possessed at least 90 images (89 more than necessary for the imposition of the five-year minimum), including images that are more sadistic than the "ordinary" child pornography sufficient to trigger the mandatory minimum. He persisted in his criminal conduct even after it cost him his job, and he lied to investigators when they came looking for evidence of the crimes. Nor does anything in the record show that Overmyer is fully rehabilitated; it shows only that he sought treatment and made commendable progress in addressing his addiction. Whatever *we* might have done in sentencing Overmyer, it is difficult to say that the *district court* acted *unreasonably* in sentencing him to more than the statutory minimum.

*United States v. Grober*, 624 F.3d 592 (3d Cir. 2010), does not lead to a different conclusion. Even aside from the geographic limitation that *Grober* hails from another circuit, there are at least two critical distinctions between the cases. For one, the *Grober* district court *disagreed* with the guidelines recommendation—a 235–240 month range for pleading guilty to six child-pornography crimes—and exercised its discretion to impose a lower sentence. *Id.* at 596. To affirm a district court's downward variance from the guidelines recommendation is distinct from reversing a within-guidelines sentence, as *Grober* itself acknowledged. *See id.* at 609 ("[I]f a district court does not in fact have a policy disagreement with [the child pornography guideline], it is not obligated to vary on this basis."). For another, *Grober* did not involve a substantive reasonableness challenge; the government challenged only the procedural reasonableness

of the sentence. (The Third Circuit, for what it is worth, held that several of the district court's sentencing processes were unreasonable, just not prejudicially so. *Id.* at 609–10.)

In contrast to *Grober*, Overmyer asks us to hold that this within-guidelines sentence is too long based on a substantive disagreement with it, an argument that carries a burden he simply has not met. And in contrast to *Grober*, our colleague asks us to hold that a five-year sentence necessarily balances the § 3553(a) factors in a reasonable way in this case and in similar ones, a contention that neither *Grober* nor any appellate precedent supports.

III.

For these reasons, we affirm.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.  The problem in this pornography case is the gross disparity, inequality, and unfairness that exists in sentencing generally, but even more so in these child pornography viewer cases.  It illustrates the continued sad dependence of federal judges on a harsh sentencing grid created by a distant bureaucracy.  To illustrate the gross disparity and the unfairness of the sentencing guidelines dealing with pornography, we should read carefully the recent case of *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010).  In *Grober* the district court and the appellate court disagreed with the government prosecutor's insistence on a 20-year guideline sentence for a viewer of child pornography.  The defendant had on his computer considerably more images and videos than Overmyer in the instant case, plus a large collection of adult pornography.  In contrast to the instant case, the guidelines grid made the defendant in *Grober* more culpable than Overmyer, ratcheting up his sentence 18 levels to Level 40 with a final guidelines range of 235-293 months.  But in *Grober* the district court conducted twelve days of hearings on the subject with witnesses, mental health experts, and a guidelines legal expert, Professor Douglas Berman of Ohio State University.  To make a long story short, instead of a 20-year sentence, the district court imposed a sentence limited to the mandatory minimum of five years, the lowest sentence it could impose.  In upholding the sentence, the Third Circuit explained that Professor Berman had shown the irrationality and arbitrariness of the sentencing guideline process for constructing the guidelines of child pornography viewers.  Both the district and appellate courts in *Grober* found that "most of the enhancements are essentially inherent in the crime and, thus, apply in nearly every case." 624 F.3d at 597.  The courts pointed out the constant problem of sentencing disparity and unfairness caused by the unbreakable link between guideline sentencing and the charge brought by the prosecution with the consequence that "the government's charging discretion and plea negotiations unfairly affect defendants." *Ibid*.  As in the instant case,

the opinion also said "that *Grober* appeared to have benefitted greatly from therapy" to correct his addiction which led the court to the five-year sentence as "sufficient" under the parsimony provision. The appellate opinion quoted with approval the district judge's conclusion that "as a matter of conscience," any term of imprisonment above the five-year mandatory minimum would be "unfair and unreasonable." *Id*. at 598-99. The Third Circuit opinion is an interesting, long, comprehensive essay on how the Sentencing Commission got so far off track in this area and why so many judges and academic writers have opposed the pornography grid we must apply in this case. The Third Circuit, the district court, and Professor Berman have performed a real service to the federal judiciary; and we should follow their example.

Here the defendant also asserts that "a sentence in the 60 month range would be sufficient but not greater than necessary to punish him for his offense behavior." (Appellant brief, p. 9.) My colleagues do not even discuss, much less take seriously, the parsimony provision. The judge in the instant case stated during the sentencing hearing that he was aware of "a very significant debate going on across the country regarding the advisory guidelines" for those convicted of child pornography crimes, but, that as a policy matter, "I believe that the existing child pornography guidelines are appropriate . . . . [and] to the extent that there is a policy argument being made by the defendant here that the child pornography guidelines are inappropriately high, I don't agree with that argument, and to the extent that I've got the authority to disagree with the child pornography guidelines on a policy basis, I do not do so because . . . I believe that the guidelines themselves measure the appropriate harm." Sentencing Tr. at 14.

As an appellate judge required by law to review and consider the sentence in this case, I assume I am permitted to disagree respectfully with the sentencing judge about the fairness of the guidelines policy and its application in this case. Like the judges in *Grober*, I would limit the sentence in such cases to the mandatory minimum of 5 years, as requested by defendant. Although sentencing law is filled with a vast combination of presumptions, sentencing jargon and efforts by the Sentencing Commission to make judges adhere to their harsh view of fairness, we should remember that in sentencing

what is most important is the result: how many years will the defendant spend in prison, how long will his liberty be foreclosed. The Guidelines in this case, as in many cases, are too harsh, here "unconscionably" harsh, as the Third Circuit says. For the last 30 years the grid has had a massive effect on incarceration: there has been a 10-fold increase in the federal prison population which has grown from 20,000 to 216,000. The Department of Justice is now bringing about 2,000 of these pornography cases a year with a mean sentence of 10 years in prison for a total of approximately 20,000 prison years for a cost to the taxpayer of approximately $800 million. See 2010 Sourcebook of Federal Sentencing Statistics at 29. In the end it is still supposed to be the Article III sentencing judges at the trial and appellate levels who are responsible for the sentence imposed, even though the grid system has given the prosecutor, a party to the case, a dominant role, as the Third Circuit district and appellate judges discussed in *Grober*.

My colleagues' response to this line of argument is that it is irrelevant and unworthy of serious consideration: They say clearly that if a district court and the grid system are together on a sentence within the grid, a reviewing judge has no business interfering. Presumably, that is the reason my colleagues refuse to discuss the harshness of the sentence, the addictive and nonviolent nature of the crime, the parsimony provision of the Sentencing Act or the validity of the grid policy that the district judge discusses and accepts. No effort is made to rebut the views expressed in the *Grober* case or in the many opinions and articles discussed there which strongly disagree with the guideline policy, and no effort is made to discuss the elemental fact that most of the guidelines enhancements are inherent in the crime itself for which Congress established a mandatory minimum of five years. The only argument that persuades my colleagues is that the district court and the grid are in agreement. When that is the case, the policy and the sentence must be right and no further analysis or commentary is needed. The grid becomes a biblical command for the reviewing judges. I do not agree.